Submitted on briefs at Pendleton October 31, affirmed December 6, 1921.

# GREIG v. OWYHEE IRRIGATION DISTRICT

## ET · AL.

### (202 Pac. 222.)

**Waters and Watercourses—Petition for Irrigation District not Required to be Filed Before Notice of Intention was Published.**

1. Under Section 6168, L. O. L., in force in 1910, it was not necessary that a petition for establishment of an irrigation district be filed in the County Court before notice of intention to present for hearing was published; it being sufficient to file it on the day it was presented for action.

**Waters and Watercourses—Qualifications of Signers of Petition for Irrigation District Held Sufficiently Shown.**

2. A petition for establishment of an irrigation district in 1910, reciting that the petitioners claimed to be "holders of title" to lands within the proposed district, was sufficient to show that the signers were qualified in an original suit to impeach and set aside the order of the county court establishing the district.

**Waters and Watercourses—Petition for Irrigation District Sufficient Without Showing Qualifications of Signers.**

3. A petition in 1910 for establishment of an irrigation district was not required to set forth particularly the qualifications of the signers.

**Waters and Watercourses—System Sought to be Utilized in Irrigation District Need not be Described in Petition.**

4. Section 6168, L. O. L., in force in 1910, did not require that the system sought to be utilized should be described in a petition for establishment of an irrigation district, and a petition as broad as the statute was sufficient.

**Waters and Watercourses—Notice of Hearing of Petition for Irrigation District, Though Signed by County Court Clerk, Sufficient.**

5. Notice of hearing of petition filed in 1910 for establishment of an irrigation district need not be signed by the clerk of the County Court, being properly signed by the petitioners.

**Waters and Watercourses—Bond Filed on Petition for Irrigation District Held Sufficient.**

6. A bond filed with a petition in 1910 for establishment of an irrigation district was not insufficient, under Section 7305, L. O. L., in that it was conditioned in the sum of $1,000 rather than for whatever cost might be adjudged in case the petition should not be granted.

**Waters and Watercourses—Sureties on Bond Filed With Petition for Irrigation District Need not be Disinterested.**

7. Sureties on a bond filed with a petition for establishment of an irrigation district in 1910 need not be "disinterested persons," under Section 7305, Or. L.

**Waters and Watercourses—Order Calling Election for Irrigation District Need not Show Proof of Publication.**

8. An order in 1910 calling an election to vote on the question of organization of an irrigation district need not show that proof of publication of petition and notice had been made; it not being necessary to state the facts from which the court derived its authority.

**Waters and Watercourses—Land in Towns Excluded from Irrigation District.**

9. Irrigation district established in 1910 was not invalid because lands included within towns were excluded.

**Waters and Watercourses—Finding Held to Show That Lands Would be Benefited by Irrigation.**

10. A finding in a proceeding to establish an irrigation district that all the lands "are susceptible of irrigation from a common or combined source and by the same system of works," etc., *held* sufficient finding that the lands would be benefited.

**Waters and Watercourses—Order Held One Establishing and Naming Irrigation District.**

11. An order that certain territory "has been duly, legally, and regularly organized as an irrigation district under the name and style of," etc., *held* a sufficient order establishing the district and naming it.

**Waters and Watercourses—Irrigation District not Invalid Because Judges and Clerks were not Qualified Voters.**

12. The fact that judges and clerks of an election to establish an irrigation district in 1910 were not qualified voters within the district would be a mere irregularity, which would not invalidate the election; such persons being, in any event, *de facto* officers, whose acts would be valid.

**Waters and Watercourses—Notice of Election to Establish District Properly Signed by Clerk of Court.**

13. Clerk of County Court under direction of the court was the proper officer to sign a notice of election in 1910 for the establishing of an irrigation district.

**Waters and Watercourses—Election Unnecessary to Include Lands in or Exclude Lands from Drainage District.**

14. Subsequent to organization thereof, lands could be included in or excluded from an irrigation district on petition, under Section 7341, Or. L., without the calling of an election; such a district being only a *quasi*-municipal corporation, having no specific charter and organized for a particular purpose.

Waters and Watercourses—Lands not to be Excluded from or Included in Irrigation District Without Consent.

15. After an irrigation district was organized in 1910, it could not, against the will of one residing outside of its boundaries, include him within its limits, nor could it, against the will of one within its boundaries, exclude him from the district.

Waters and Watercourses—Want of Election of Officers and Failure to Issue Bonds not Abandonment of Franchise of Irrigation District.

16. An irrigation district organized in 1910 did not abandon its corporate franchise by reason of the fact that during the years 1914 to 1918, exclusively, no election of officers was had, and the old officers continued to hold over, and no bonds were voted or irrigation system constructed.

From Malheur: Dalton Biggs, Judge.

In Banc.

This is a suit by a land owner within the boundaries of the Owyhee Irrigation District, attacking the legality of its organization and seeking to enjoin the district from imposing taxes, selling bonds or otherwise acting as an irrigation district. The answer recites the steps taken in organizing the district, the qualifications of the officers thereof, the inclusion of certain lands in the district and the exclusion of other lands therefrom. The questions pertinent to this appeal are raised by the pleadings and stipulated records. The Circuit Court found against the plaintiff and entered a decree upholding the legality of the organization of Owyhee Irrigation District, the inclusion of certain lands therein, the exclusion of lands therefrom, and other acts of the district. From this decree the plaintiff appeals.                              Affirmed.

For appellant there was a brief over the name of *Mr. R. W. Swagler.*

For respondents there was a brief over the names of *Mr. W. H. Brooke* and *Mr. P. J. Gallagher.*

McBRIDE, J.—1. The first objection to the legality of the proceedings for the organization of the district is founded upon the fact that the petition was not filed in the County Court before the notice of the intent to present it for hearing had been published. The notice, containing a copy of the petition in full together with the names of the petitioners, was duly published for four weeks as required by law, and stated among other matters that it would be presented to the County Court of Malheur County at the courthouse at Vale, on Monday, March 28, 1910, at 11 o'clock A. M. On that date it was duly filed in said court, with proof of service thereon, and the petition was at the same time filed and presented for action. This is all that the law as it then stood required: *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182); *Herrett* v. *Warmsprings Irr. Dist.,* 86 Or. 343 (168 Pac. 609).

2, 3. The second objection is that, "the petition does not undertake to specify whether the signers of said petition are owners of land or claimants to public lands and therefore is insufficient in describing the qualifications of the signers." The petition states that the petitioners claim to be "holders of title" to lands within the proposed district. That in itself would be sufficient in a proceeding like the present, which is in effect an original suit to impeach and set aside the order of the County Court. But this objection is directly answered contrary to the contention of plaintiff, in *William Hanley Co.* v. *Harney Valley Irr. Dist.,* 93 Or. 78 (180 Pac. 724, 182 Pac. 559), wherein it was held that the petition need not set forth particularly the qualifications of the signers. See, also, *Links* v. *Anderson* and *Herett* v. *Warmsprings Irr. Dist., supra.*

4. The next point of attack is that the petition is indefinite in not describing the "kind of system sought to be utilized upon the organization of said district." The statute then in force, Section 6168, L. O. L., which in the respects mentioned is identical with Section 7305, Or. L. (Olson's Comp.), provides what the petition shall contain, and there is no requirement therein that the "system sought to be utilized" shall be described. The petition is as broad as the statute and is therefore sufficient.

5. Then follows the objection that "the notice of hearing of the petition is signed by the petitioners and not by the County Court or clerk thereof." The mode pursued was the proper one and has been the invariable practice. It would be an anomaly, if the clerk of the court should be required to give notice that the petitioners would present to the court an application not yet filed and which the law did not require to be filed until presentation.

6. Another contention urged by the plaintiff is that the bond required by Section 7305, *supra,* is insufficient in that it is conditioned in the sum of $1,000 rather than for whatever cost might be adjudged in case the petition should not be granted. A like objection was decided adversely to the plaintiff's position, in *Herrett* v. *Warmsprings Irr. Dist., supra.* The bond in the instant case is therefore held sufficient.

7. It is also objected that the sureties on said bond are not disinterested persons but are among the petitioners. There is no statute requiring the sureties to be "disinterested persons." So long as they are worth the sum in which the bond is conditioned, the law is satisfied.

8. The following objections are made to the order of April 4, 1910, calling an election for the organization of the district:

"1. While the order shows that said petition and notice had been published for the requisite period of time, yet it does not show that proof of the publication thereof had been made.

"2. In establishing the boundaries of said district certain lands included within the towns of Nyssa and Ontario were excluded from the heart of said district, thereby leaving territory within the boundaries of said district over which said district should not have authority.

"3. While the order shows that evidence was offered showing that the lands within said district would be benefited, yet there is no finding that said lands would be so benefited.

"4. While the order undertakes to establish the boundaries of said district, yet there is no order establishing said district or naming said district.

"5. By said order, certain persons were appointed as judges and clerks of election but there is no finding in said order that said persons so appointed were qualified voters within said district or qualified to fill such positions."

As to the first contention, it was not necessary for the order authorizing an election to state the facts from which the court derived its authority. In the order appears the following finding:

"That said petition, together with notice given by the signers of said petition stating the time and place of the meeting of said court at which the same would be presented, has been duly and regularly published as required by law, for at least four weeks immediately before the time at which same was to be presented, to wit: on the twenty-fourth day of February, 1910, and the third, tenth, seventeenth and twenty-fourth days of March, 1910, in 'The Ontario Optimist,' a weekly newspaper printed and published

at Ontario, Malheur County, Oregon, and of general circulation during all of the said time in said county and state; and that said petition and notice was not published in a supplement thereof."

The proof of publication was on file in the record, and this was sufficient.

9. The second point under this objection is answered contrary to the contention of plaintiff in *Herrett* v. *Warmsprings Irr. Dist., supra,* and neet not be further considered.

10. As to the third specification, it may be said that there is a direct finding that all the lands sought to be included in the proposed district "are susceptible of irrigation from a common or combined source and by the same system of works, to wit: by the construction of an irrigation system including dams, reservoirs and canals upon and from the Owyhee River," etc. The objection is untenable.

11. Concerning the fourth point under this objection, it may be said that the final order of the court after reciting in full the results of the election and other matters connected therewith, contains the following:

"Now, therefore, it is ordered, adjudged, declared and decreed by the court, and the court does hereby order, adjudge, declare and decree: First, that the territory hereinafter described, pursuant to the provisions of an act of the legislative assembly of the state of Oregon approved February 20, 1895 (Chapter V of Title XXXIX of Bellinger & Cotton's Annotated Code), and statutes of Oregon and acts amendatory thereto, has been duly, legally and regularly organized as an irrigation district under the name and style of and shall be known as 'Owyhee Irrigation District,' the boundaries of such territory being described as follows, to wit."

Then follows the description as in the petition. The order is absolutely full and complete and entirely negatives the objection urged.

12. The fifth subdivision of this objection is that in the order calling the election there is no recital that the persons designated as judges and clerks of election were qualified voters within the district. Conceding this to have been the case, it would at the worst have been a mere irregularity which would not have invalidated the election. The persons so designated would in any event have been officers *de facto* and as such their acts would have been valid. No question of this or any character was raised at the time the election returns were canvassed, or indeed at any time before this suit was brought.

13. The objection that the notice of the election was signed by the clerk and not by the court must be overruled. The clerk under direction of the court was the proper officer to sign the notice. It would be difficult to find a proceeding of this character conducted with a more faithful and accurate adherence to the requirements of the statute than the one now under consideration. The district was legally organized and every requirement of the statute substantially complied with.

14, 15. Subsequent to the organization of the district certain parties made application to have their lands included within the district in accordance with the provisions of Section 7341, Or. L., and other owners within the district applied to have their lands excluded. After compliance with the provisions of Section 7341, the orders of inclusion and exclusion were made, and it is now contended that such orders are void because the matter of inclusion and exclusion was not submittd to a vote. The law does not require

such submission, but, on the contrary, prescribes a different method, which was followed in this instance. In support of her contention the plaintiff cites *McKeon* v. *Portland,* 61 Or. 385 (122 Pac. 291); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, (124 Pac. 637); *Thurber* v. *McMinnville,* 63 Or. 410 (128 Pac. 43), and *Landess* v. *Cottage Grove,* 64 Or. 155 (129 Pac. 537). These cases are not in point here. In all of them the corporations were wholly public and municipal, formed in pursuance of constitutional provisions and having charters adopted either by themselves or conferred by legislation. Under constitutional provisions such corporations cannot in the absence of state consent by legislation so change their characters as to include new territory without the consent of the people of such territory; much less can they, as the town of St. Johns attempted to do in *McKeon* v. *Portland, supra,* forfeit their charters and commit suicide without the consent of the people of the whole state or in some method provided by general legislation. An irrigation district on the contrary is only a *quasi-*municipal corporation, having no specific charter and organized for a particular purpose. It has quite as many elements of a private corporation as of a municipal. It cannot against the will of one residing outside of its boundaries include him within its limits. He must petition to be so included. Neither can it against the will of one who is within its boundaries and made subject to its jurisdiction exclude him from the district. He must petition for such exclusion. But we know of no constitutional reason why, when such a petition is presented, the district may not under the authority granted by Section 7341, Or. L., make the desired inclusion or exclusion, through the

officers representing its interests without going to the great expense of holding a general district election to decide the matter. This question was raised and argued in *Medford Irr. Dist.* v. *Hill,* 96 Or. 649 (190 Pac. 957), in which we said:

"There is no doubt that the act of the legislature provides ample authority for such elimination, if the proper steps are taken and the proper notice given. But it is necessary that proper notice shall be given by publication, as provided by the act, and that every step which the act requires for such elimination must be carefully followed to make the elimination valid."

And again in the same case we used this language:

"The proceedings in relation to the attempted elimination are not presented by the petition for confirmation, and we find nothing in the record upon which we can decide whether the requisite notice was given or not. If such notice was given, and the law was complied with in every step leading up to such elimination, then no one could complain since every land owner had received notice and an opportunity to be heard, if he desired to object. But if these notices were not given, as required by the statute, then it would be better to take steps to have such eliminations as are necessary carefully made, in accordance with the statute, before another election is called."

These words were not used inconsiderately, but with a view to their being acted upon in case a bond election should be had in the future. We adhere to the view therein indicated. The sections quoted contain ample provisions for the protection of bondholders holding obligations issued before such inclusion or exclusion, but that question is of no interest here, as no bonds have yet been issued by the Owyhee Irrigation District.

16. It is finally contended that the district has abandoned its corporate franchise by reason of the

fact that during the years 1914 to 1918 inclusive, no election of officers was had and the old officers continued to hold over, and by reason of the further fact that no bonds have ever been voted or irrigation system constructed. We know of no law by which a corporation of this character can die a natural death or commit suicide. The World War and the consequent inability of corporations of this character to negotiate bonds may account for the failure of the district to hold yearly elections. However, it was not dead, but sleeping, and having now "awakened to newness of life," it is entitled to use its long dormant powers for the purposes for which it was constituted.

The decree of the Circuit Court is affirmed.

AFFIRMED.