Argued and submitted January 14,
affirmed April 14, reconsideration denied May 29,
petition for review allowed November 25, 1980
See later issue Oregon Reports

MILLER,
*Appellant,*

*v.*

GRANTS PASS IRRIGATION DISTRICT, et al,
*Respondents.*

MILLER,
*Appellant,*

*v.*

GRANTS PASS IRRIGATION DISTRICT, et al,
*Respondents.*

(Nos. 77-716-L, 77-731-L, CA 14444)
(Cases Consolidated)

609 P2d 859

James C. Waggoner, Portland, argued the cause for appellant. With him on the briefs were Lloyd B. Ericsson, Jeffrey C. Bodie, and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

John W. Eads, Medford, argued the cause for respondent Grants Pass Irrigation District. On the brief were Thomas D. Melum, William V. Deatherage, and Brohnmayer, Deatherage, Foster & Purdy, Medford.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Plaintiffs were injured on June 17, 1976, when their boat was swept over the Savage Rapids Dam by the current of the Rogue River. Plaintiffs brought actions against Grants Pass Irrigation District and the State of Oregon for personal injuries allegedly resulting from defendants' negligent and reckless conduct and maintenance of a nuisance. Assigning as error the granting of defendants' motions for summary judgment, plaintiff makes three arguments: (1) the irrigation district is not a public body within the meaning of the Oregon Tort Claims Act (TCA); (2) the conduct of the district was not discretionary activity rendering it immune from liability pursuant to the TCA; and (3) TCA immunity does not extend to either defendant with respect to the cause of action in nuisance.[1]

The irrigation district owns, operates and maintains the Savage Rapids Dam. The state has jurisdiction to promulgate boating regulations applicable to the waters upstream from the dam and does so through its Marine Board. ORS 488.600(1). In 1957, two people were injured when their boat went over the dam. Subsequently, a warning system consisting of barrels or other flotation devices attached to a cable strung across the river upstream from the dam was designed and erected by local volunteers and the Grants Pass Rural Fire Department, a proprietorship. The cable was customarily put in place in May or June each year and removed in September or October. In at least one year between 1970 and 1976 the cable was not installed at all. Prior to 1976, the fire department requested and received permission from the irrigation district to attach one end of the cable to an iron eyehook set in concrete on district property that had been installed prior to 1955 for dam maintenance purposes. Each spring the irrigation district notified

---

[1] Plaintiff concedes that the state can only be held liable on the basis of the third argument.

local agencies and media when the dam was about to be closed for summer impoundment. In some, but not all, years the district also directly notified the fire department.

In June, 1976, a week before the boating accident involved here, the manager of the irrigation district called the proprietor of the fire department to inform her that the dam was closed, and he asked why the marker cable was not yet up. The proprietor said that a boat was needed to string the cable across the river. The manager said he would see what could be done but made no promise to do anything else. No decision was made by the board of the irrigation district to take any action, although the minutes show that the board was aware of the situation. At the time of the accident, the marker cable was still not in place. Plaintiffs charge that the defendants had a duty either to maintain the marker cable or erect an alternative warning system.

The Tort Claims Act states in part:

> "Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. As used in ORS 30.260 to 30.300, 'tort' includes any violation of 42 U.S.C. section 1983." ORS 30.265(1).

"Public body" is defined in ORS 30.260(2):

> " 'Public body' means the state and any department, agency, board or commission of the state, any city, county, school district or other political subdivision or municipal or public corporation and any instrumentality thereof. 'Public body' includes any intergovernmental agency, department, council or other like entity which is created under ORS 190.003 to 190.110, and which does not act under the direction and control of any single member government."

Plaintiffs support the contention that irrigation districts are not included within the definition of "public

body" by citation of cases holding that irrigation districts are not subject to certain electoral requirements. Bona fide land ownership was and is a voting requirement in irrigation district elections,[2] contrary to Article II, section 2 of the Oregon Constitution. In *Board of Directors v. Peterson,* 64 Or 46, 53, 128 P 837, 129 P 123 (1913), the Supreme Court, contrasting other quasi-municipal corporations such as school districts with the irrigation district, avoided the constitutional problem:

> "On the contrary, in the irrigation districts provided for here only the land is benefited or burdened, and only the land owner has any interest in the choice of its officers, or is in any way concerned in their acts. The management of the district affairs is solely of the irrigation project in the private interest of the land owners, and therefore the apparent reason for and purpose of the requirements of Section 2, Article II, as applicable to elections in municipal or *quasi-*municipal corporations, fails in the case of the irrigation district.
>
> "*** [A] contrary holding would work a great wrong upon the farmers, who may obtain considerable benefit under such an organization, and who, on the other hand, might be burdened beyond the benefits conferred ***."

Similarly, in *Greig v. Owyhee Irr. Dist.,* 102 Or 265, 273, 202 P 222 (1921), the court found unnecessary the expense of a vote on the exclusion or inclusion of lands within the boundaries of an irrigation district and stated:

> "An irrigation district on the contrary is only a *quasi-*municipal corporation, having no specific charter and organized for a particular purpose. It has quite as many elements of a private corporation as of a municipal. It cannot against the will of one residing outside of its boundaries include him within its limits. He must petition to be so included. Neither

---

[2] *See* ORS 545.002.

can it against the will of one who is within its boundaries and made subject to its jurisdiction exclude him from the district. He must petition for such exclusion. ***"

Decisions holding inapplicable electoral requirements of the Oregon Constitution are not dispositive of the issue whether irrigation districts may avail themselves of governmental immunity in the tort liability context. *See, e.g., Harris v. Burr*, 32 Or 348, 367, 52 P 17 (1898) (school district exempted from electoral requirements). Moreover, the distinction made in *Peterson,* stems from characterizing the election of officers to be a matter of internal administration. The tort liability of an irrigation district, however, is not solely the concern of landowners within its boundaries; third parties may be adversely affected by its tortious actions. The distinction expressed in *Greig* does not reflect the power of the irrigation district to set its boundaries without the consent of some of the landowners affected. ORS 545.004(1). In *Rathfon v. Payette-Oregon S. Irr. Dist.*, 76 Or 606, 610, 149 P 1044 (1915) (not cited in *Greig*), a suit to exclude plaintiff's land from an irrigation district, the Supreme Court contrasted district improvement companies[3] with irrigation districts to illustrate the compulsory aspects of the latter:

"The object and purpose of the two acts are apparently the same, that of improving the arid lands of the state. The essential difference between the two organizations is that in the district improvement law the inclusion of land in the first instance is entirely voluntary, whereas in the irrigation district law, 50 or a majority of the voters qualified by law to vote at an irrigation election may include therein the land of the remaining land owners against their will, provided the land is not legally entitled to be excluded. The irrigation districts under the act governing their organization are public corporations ***."

[3] *See* ORS 554.010 *et seq.*

Other cases have emphasized the public character of irrigation districts in the context of tort and contract liability. In *Twohy Bros. Co. v. Ochoco Irr. Dist. et al*, 108 Or 1, 11, 41, 210 P 873, 216 P 189 (1923), the legal status of an irrigation district was in issue for purposes of determining if the district was liable on an implied contract. The court defined an irrigation district as a municipal corporation, despite its engaging in proprietary activities, in reaching the conclusion that public policy required competitive bidding for award of that contract:

> "The legal status of an irrigation district has been brought in question in this controversy. An irrigation district organized under the Irrigation District Law of this state is a municipal corporation, its property public property, and its officers public officers, elected by the legal voters of the irrigation district, with duties and powers fixed and limited by the law of their creation." 108 Or at 11.

> "The acts performed, and the duties discharged, by an irrigation district, in constructing an irrigation works for supplying water for irrigation to the land owners of the district, so closely resemble the powers exerted by a city in providing a water system, that it necessarily follows that an irrigation district, in constructing its irrigation system, is exercising a private or proprietary power. In doing so, however, it does not lose 'its distinctive municipal character.' [Cite omitted.] Its acts and duties are public, at least in the sense that they are performed by public officers for the benefit of that portion of the public within its limits." 108 Or at 41.

Finally, in *Hillman v. North Wasco Co. PUD*, 213 Or 264, 310, 323 P2d 664 (1958) (*overruled on other grounds* in *Maulding v. Clackamas County*, 278 Or 359, 365, 563 P2d 731 (1977)), the question was whether a public utility district was a "public corporation" acting in its proprietary capacity, for purposes of

[829]

determining its tort liability for negligent acts under ORS 30.320.[4] The court commented:

> "Since the statute makes no distinction between the tort liability of cities and other public corporations when acting in a proprietary capacity, we see no reason to create such a distinction by judicial construction. The application of the statute to port districts and irrigation districts has apparently been accepted as a matter of course and we think it should be applied with like effect to people's utility districts."

Under Oregon statutes irrigation districts possess several "public" characteristics: *e.g.*, the right of eminent domain, ORS 545.082; the power of assessment, ORS 545.432; the capacity of a majority to include members without their consent, ORS 545.004(1); and meetings that are open to the public, ORS 192.610(1). Also, we note that for purposes of water administration, districts organized for a public purpose are included in the statutory definition of public corporation. ORS 536.210(2).

The abolition of the governmental-proprietary distinction in the old cases by ORS 30.265(1) does not logically compel a different judicial perception of what entities are to be considered public corporations in determining their tort liability. That immunity is now attached to performance or failure to perform discretionary functions or duties (ORS 30.265(3)(c)), rather than to exercise of a governmental function does not necessarily alter the meaning of "public corporation" in this context. In the absence of authority to the contrary or a more restrictive statutory definition of "public corporation" than is contained in ORS 30.260(1), we hold that an irrigation district is a "public body" within the meaning of the Tort Claims Act.

---

[4] ORS 30.320 (1957) authorizes actions against "any other public corporation mentioned in ORS 30.310," which states:

"A suit or action may be maintained by the State of Oregon or any county, incorporated city, school district or other public corporation of like character in this state ***."

We now turn to the question whether the district may avail itself of immunity based on performance of a discretionary function in this instance.

ORS 30.265(3)(c) provides an exception to the general rule of tort liability for public bodies:

> "Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:
> "* * * * *
> "(c) any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

A decision whether or not to erect warning signs or a warning system is within the discretionary exception. *See Smith v. Cooper,* 256 Or 485, 509-11, 475 P2d 78 (1970); *Stevenson v. State of Oregon,* 42 Or App 747, 753, 601 P2d 854, *rev allowed,* 288 Or 173 (1979). The only allegation in plaintiff's complaint that could embrace conduct not within that exception is the charge of negligent or reckless conduct by the irrigation district in the following particular:

> "In failing to maintain the pre-existing warning marker system which had been in past years used to warn boaters of the presence of the Savage Rapids Dam when defendants knew that the absence of said pre-existing warning marker system could cause boaters to be unaware of the presence of the Savage Rapids Dam, thereby creating the risk that boaters could approach too close to the Dam and then be swept over the Dam."

In *Jones v. Chehalem Park & Rec. Dist.,* 28 Or App 711, 717, 560 P2d 686, *rev den* (1977), we characterized the defendant's duty to maintain existing traffic direction signs as a ministerial function not within the discretionary act exception and stated that "[b]y erecting the signs defendant has acknowledged that a dangerous condition exists and assumed a responsibility to warn the public." Here there was no showing that the district erected the marker cable system, either

[831]

originally or seasonally. *Chehalem Park* is therefore not directly controlling. It is true that some members of the district's board were aware prior to this accident that in 1957 a similar incident had occurred and knew of the prior practice relating to the warning mechanism. The question is in what respect the district had assumed responsibility to warn the public by its prior actions concerning the warning system erected by others. The narrow issue then becomes whether there is any evidence that the irrigation district failed in its ministerial duties.

Prior to the accident in question, the irrigation district took three actions concerning the marker cable: (1) it allowed the cable to be attached to its iron eyehook; (2) it gave public notification that the dam was closing; and (3) in response to a request by the fire department, it would try to find a boat for the fire department with which to string the cable across the river.[5] Even if we were to assume that enforceable duties arose from these actions, there is neither allegation nor evidence that the district ever undertook to maintain the cable warning system, failed to maintain its iron eyehook properly, failed to notify the public or the fire department in this instance, or failed to attempt to locate a boat. The essence of the duty of maintenance urged by plaintiff, all circumlocutions aside, is the responsibility of putting up the marker cable each season. There is simply no evidence in the material submitted on the motions for summary judgment that the district had assumed that responsibility. There being no issue of fact for the jury in that respect, the motion for summary judgment was properly granted.

Plaintiff's final contention is that governmental immunity for discretionary functions is not available

------

[5] It also appears from the affidavits in this case that subsequent to the accident the cable owned by the fire department was stolen from the premises of the irrigation district, which replaced it with a used logging cable. These events occurring after the accident are irrelevant to the determination of defendants' duties.

to either defendant with respect to the third cause of action, which alleged maintenance of a nuisance based on negligent or reckless conduct. The language of ORS 30.265(3)(c) pertaining to that exception is broad: "*Any* claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." In addition, the TCA on its face is applicable to all tort claims, ORS 30.265(1), *supra.* Plaintiff does not assert that maintenance of a nuisance based on either negligence or reckless conduct is anything but a tort. This court has previously suggested that the defense of governmental immunity deriving from the TCA is available in an action for damages arising out of a nuisance caused by negligent conduct. *Stroda v. State Highway Comm.*, 22 Or App 403, 413, n 2, 539 P2d 1147, *rev den* (1975).

The statute seems to say that reckless conduct would also be encompassed in the exception, because immunity does not hinge on whether or not the discretion is abused. The cases cited by plaintiff[6] predate the TCA and are contrary to the unrestricted language of the statute. The cause of action in nuisance is based upon the same conduct alleged as negligent or reckless conduct. To remove the defense of immunity for maintenance of such a nuisance would make availability of the defense dependent upon plaintiff's choice of terminology. As we stated in *Comley v. State Bd. of Higher Ed.*, 35 Or App 465, 475, 582 P2d 443 (1978):

"\*\*\* To permit a jury or judge to pass upon the reasonableness of such governmental decisions in the context of a tort action would dilute the decision-making authority of the branch of government entrusted with the responsibility for that decision. \*\*\*"

Affirmed.

---

[6] *Levene v. City of Salem*, 191 Or 182, 229 P2d 255 (1951); *Adams v. City of Toledo*, 163 Or 185, 96 P2d 1078 (1939); *Wilson v. City of Portland*, 153 Or 679, 58 P2d 257 (1936). *See also Borden v. City of Salem*, 249 Or 39, 436 P2d 734 (1968).

**RICHARDSON, J.,** dissenting.

I agree with the majority's holding that the irrigation district is a public body entitled to the protections afforded by the Tort Claims Act. I disagree with the majority's holding that, as a matter of law, from the facts set forth in the materials submitted regarding the motion for summary judgment, the irrigation district is not responsible for maintaining a warning system.

The district concedes that it has responsibility for maintaining the dam. It denies that the responsibility includes a requirement of warning persons using the river. The district's argument, accepted by the majority, is that it never made a discretionary decision to install a warning system and that maintenance of the warning device installed by others is not the responsibility of the district. The majority correctly points out that under the current state of the law, tort immunity depends upon a distinction between discretionary and ministerial acts. Insofar as any rational rule or rational application of a rule can be discerned from the plethora of cases on the subject, I conclude that when the district assumed responsibility for maintaining the dam it assumed a like responsibility for warning users of the body of water created by the dam of the inherent danger created by the precipitous spillway.

In *Smith v. Cooper*, 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), the Supreme Court, after an extensive discussion of the discretionary-ministerial distinction, stated that public employees are *generally immune* from liability for alleged negligence in planning and designing public structures. The court then explained:

> "We have used the term 'generally immune' in the realization that it is conceivable that a complainant could allege and prove a defect in design or planning that could adequately and appropriately be passed upon by a judge or jury, for example, ludicrous for the

> sake of clarity, a road designed so that it ended at the edge of a cliff. * * * " 256 Or at 511.

Presumably the court's example would allow a court or jury to determine the design was negligent in not including, at the minimum, a warning to motorists that the road ended at a precipice. The dam in question in this case created a body of water that flowed over a precipitious spillway. The district was aware that the body of water behind the dam was regularly used by boaters, waterskiers and fishermen and that at least two prior accidents had occurred when boaters went over the spillway. I see little distinction between a dam designed with a spillway and no warning device and the example of the highway set forth in *Smith v. Cooper, supra.* I conclude that a judge or jury can appropriately and adequately pass upon the judgment of the district in designing the dam without a suitable warning device. Plaintiffs should be allowed to prove the allegations of the complaint. Accordingly, I dissent.