Argued and submitted June 16, reversed and remanded April 27, respondent State of Oregon's reconsideration allowed, respondent Grants Pass Irrigation District's reconsideration denied (64 Or App 40, 667 P2d 4), former opinion adhered to July 27, State's reconsideration denied September 16, petitions for review allowed November 1, 1983 (295 Or 840)
See 297 Or 312, 686 P2d 324 (1984)

MILLER,
*Appellant,*
*v.*
GRANTS PASS IRRIGATION DISTRICT et al,
*Respondents.*

MILLER,
*Appellant,*
*v.*
GRANTS PASS IRRIGATION DISTRICT et al,
*Respondents.*

(77 716 L, 77 731 L; CA No. A22052)

663 P2d 30

Joan L. Volpert, Portland, argued the cause for appellants. With her on the briefs were Lloyd B. Ericsson and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

William V. Deatherage, Medford, argued the cause for respondent Grants Pass Irrigation District. With him on

the brief was Frohnmayer, Deatherage, deSchweinitz & Eads, Medford.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This action for damages for personal injuries is before this court for a second time. Plaintiffs were injured in June, 1976, when their boat was swept over the Savage Rapids Dam by the current of the Rogue River. They brought this action against Grants Pass Irrigation District (district) and the State of Oregon for injuries allegedly resulting from defendants' negligent and reckless conduct and maintenance of a nuisance. The trial court granted summary judgment for both defendants on the ground that both were immune from liability under the Oregon Tort Claims Act (TCA).

On appeal, we affirmed the trial court, holding that the irrigation district is a "public body" within the meaning of the TCA, that it was immune from liability for one aspect of its alleged negligent and reckless conduct and that there was no evidence of the other, and that both defendants were immune under the TCA for maintenance of a nuisance to the same extent as for their allegedly negligent and reckless conduct. *Miller v. Grants Pass Irrigation,* 45 Or App 823, 609 P2d 859 (1980). The Supreme Court allowed review but dismissed the appeal for lack of an appealable order[1] and remanded to this court to vacate our opinion in the case. 290 Or 487, 622 P2d 729 (1981). We vacated the opinion and dismissed the appeal. 51 Or App 471, 625 P2d 685 (1981). Plaintiffs are now properly before this court and contend that our first decision was wrong. We agree and reverse and remand for trial.

We take the undisputed facts as they were stated in the opinion we vacated:

"The irrigation district owns, operates and maintains the Savage Rapids Dam. The state has jurisdiction to promulgate boating regulations applicable to the waters upstream from the dam and does so through its Marine Board. ORS 488.600(1). In 1957, two people were injured when their boat went over the dam. Subsequently, a warning system consisting of barrels or other flotation devices attached to a cable strung across the river upstream from the dam was designed and erected by local volunteers and

---

[1] Plaintiffs attempted to appeal from the grant of summary judgment rather than from the judgment.

the Grants Pass Rural Fire Department, a proprietorship. The cable was customarily put in place in May or June each year and removed in September or October. In at least one year between 1970 and 1976 the cable was not installed at all. Prior to 1976, the fire department requested and received permission from the irrigation district to attach one end of the cable to an iron eyehook set in concrete on district property that had been installed prior to 1955 for dam maintenance purposes. Each spring the irrigation district notified local agencies and media when the dam was about to be closed for summer impoundment. In some, but not all, years the district also directly notified the fire department.

"In June, 1976, a week before the boating accident involved here, the manager of the irrigation district called the proprietor of the fire department to inform her that the dam was closed, and he asked why the marker cable was not yet up. The proprietor said that a boat was needed to string the cable across the river. The manager said he would see what could be done but made no promise to do anything else. No decision was made by the board of the irrigation district to take any action, although the minutes show that the board was aware of the situation. At the time of the accident, the marker cable was still not in place. * * *" 45 Or App at 825-26.

Plaintiffs' alleged that defendants had a duty either to maintain the warning cable or to install an alternative warning system and that their failure to do so constituted negligent and reckless conduct and maintenance of a nuisance. Both defendants moved for summary judgment solely on the ground that they are immune from liability under the TCA. On appeal, plaintiffs concede that the state can be held liable only on the nuisance theory.

ORS 30.265(3)(c) (*amended by* Or Laws 1981, ch 490, § 4), creates an exception to the general rule of tort liability for public bodies. At the time of trial, it provided:

"Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

■ ■    Plaintiffs' first renew their argument that the district is not a "public body" and, therefore, not within the coverage of the TCA. We adhere to the analysis of our vacated opinion in which we observed that prior cases had emphasized the public character of irrigation districts in the context of tort liability, 45 Or App at 826-30, and hold that an irrigation district is a public body as defined in ORS 30.260(2) (*amended by* Or Laws 1981, ch 109, § 1). Plaintiffs also argue that, regardless of whether the act is "discretionary," the TCA does not extend immunity to public bodies for maintenance of a nuisance based on negligent or reckless conduct. In determining whether governmental immunity is available, however, the focus is on the nature of the conduct alleged to be negligent or reckless, not on the theory of recovery that plaintiffs pursue. As we said in the vacated opinion regarding the exception to liability in ORS 30.265(3):

> "* * * The language of ORS 30.265(3)(c) pertaining to that exception is broad: '*Any* claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.' In addition, the TCA on its face is applicable to all tort claims, ORS 30.265(1), *supra.* Plaintiff does not assert that maintenance of a nuisance based on either negligence or reckless conduct is anything but a tort. This court has previously suggested that the defense of governmental immunity deriving from the TCA is available in an action for damages arising out of a nuisance caused by negligent conduct. *Stroda v. State Highway Comm.,* 22 Or App 403, 413 n 2, 539 P2d 1147, *rev den* (1975).
>
> "The statute seems to say that reckless conduct would also be encompassed in the exception, because immunity does not hinge on whether or not the discretion is abused. The cases cited by plaintiff predate the TCA and are contrary to the unrestricted language of the statute. The cause of action in nuisance is based upon the same conduct alleged as negligent or reckless conduct. To remove the defense of immunity for maintenance of such a nuisance would make availability of the defense dependent upon plaintiff's choice of terminology. * * *" (Footnote omitted; emphasis in original.) 45 Or App at 833.

The question remains whether defendants are immune from liability for their conduct in this instance

based on performance of a discretionary function.[2] In the vacated opinion, we stated that:

"* * * A decision whether or not to erect warning signs or a warning system is within the discretionary exception. *See Smith v. Cooper,* 256 Or 485, 509-11, 475 P2d 78 (1970); *Stevenson v. State of Oregon,* 42 Or App 747, 753, 601 P2d 854, *rev allowed* 288 Or 173 (1979). * * *" 45 Or App at 831.

■    Subsequent cases have established that this statement sweeps too broadly. *Stevenson* was eventually reversed by the Supreme Court in an opinion which put forth a different analysis for determining immunity for discretionary acts than previously had been applied. *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980). The court held that governmental bodies are immune for the exercise of policy judgment, *e.g.,* the decision to build a highway rather than a railroad track. It pointed out that many governmental decisions "involve the use of 'discretion' in the sense that a choice must be made but they do not involve the use of 'discretion' in the sense that a policy decision is required." 290 Or at 10-11. Public bodies are immune only when they exercise the latter type of discretion. The court noted that there are circumstances in which "the nature of the function alone is sufficient to establish immunity. In other instances, evidence of how the decision was made is necessary" in order to determine whether the decision involved the exercise of policy judgment. 290 Or at 15. It held that the state was not immune from liability for the arrangement of traffic lights and the design of their shielding, because the burden of proving immunity was on the state, and there was "nothing in the record to suggest that the responsible employes of the highway division made any policy decision of the kind we have described as the exercise of governmental discretion." 290 Or at 16.

---

[2] The district argues that it had no duty to warn of the dam's presence, because the duty had been assumed by the fire district. The state argues that it cannot be held liable under plaintiffs' complaint, because it did not "operate" the dam, as plaintiffs alleged. Both defendants' motions for summary judgment, however, relied exclusively on their immunity for discretionary acts. Consequently, we will not address either of the new arguments on appeal. *See Northwest Admin. v. Woodburn Truck Line, Inc.,* 61 Or App 299, 302, 657 P2d 714 (1983).

■ The decision whether to warn people using the river of the dam's presence is not one that falls automatically within the discretionary exception based on the nature of the function. It is not self-evident that the decision requires the kind of policy choices that governmental immunity is designed to protect. As the *Stevenson* court said of the state's decision whether to provide shielding on the traffic lights or to make other changes to eliminate the alleged misleading placement of the lights, the decision here is one which "might or might not have been made in the exercise of governmental discretion," 290 Or at 15, depending on the manner in which the particular decision was made.

Here, the irrigation district has not, by affidavit or otherwise, claimed that it made a policy decision involving the exercise of governmental discretion. Consequently, it was error to grant its motion for summary judgment.[3] *See Brasel v. CSD,* 56 Or App 559, 642 P2d 696 (1982).

■ For the same reason, it was error to grant the state's motion for summary judgment. At the time of plaintiffs' accident, ORS 488.600(1)[4] gave the Marine Board

---

[3] In addition, we question whether it is within the district's discretion not to warn people on the river of the dam's presence, regardless of how the decision is made. *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), makes clear that in some cases a public body's conscious policy choice not to provide "all desirable safety features," *e.g.,* failure to install a cattle guard at an entrance to a controlled access freeway, would constitute the immune exercise of governmental discretion. 290 Or at 14-15. Where the public body creates a condition as potentially hazardous to the public as a dam on a river, however, it may have a nondiscretionary duty to warn of the hazard. Although the choice of warning systems is probably within the public body's governmental discretion, the decision whether to warn at all may not be. *See Smith v. Cooper,* 256 Or 485, 511, 475 P2d 78 (1970) (observing that a defect in design or planning as "ludicrous" as a road designed to end at the edge of a cliff may be appropriately passed on by judge or jury). Because the record on the summary judgment motion does not show that the district exercised a governmental policy choice here, we do not reach the question whether it would have been within its discretion not to provide any warning system at all.

[4] ORS 488.600(1) (*amended by* Or Laws 1979, ch 206, § 5 and Or Laws 1981, ch 102, § 2), provided:

"After a hearing upon notice, the Board, upon consideration of the size of a body of water and traffic conditions, may make special regulations consistent with the safety and the property rights of the public or when traffic conditions become such as to create excessive congestion, relating to the operation of boats in any waters within the territorial limits of any political subdivision of this State."

authority to make regulations regarding the operation of boats in the waters of the state "consistent with the safety and property rights of the public or when traffic conditions became such as to create excessive congestion." Plaintiffs argue that this statute imposed a duty on the state to require some warning of the dam's presence or to erect a warning itself. The state responds that it is immune from liability because ORS 488.600(1) authorized, but did not require, the board to enact regulations governing the waters upstream from the dam. Therefore, it contends, the decision whether to act under the statute was "discretionary."

■ The board's decision whether to exercise its authority under the statute may require that a choice be made, but we cannot say that, just by virtue of the permissive language of the statute, the nature of the function it authorizes necessarily requires the making of a governmental policy choice. The affidavits in support of the state's motion for summary judgment indicate that the board never considered regulating the waters upstream from the dam. Without evidence that some decision was made, and how the decision was made, *see Stevenson v. State of Oregon, supra,* we cannot say that the board's failure to require a warning constituted the immune exercise of governmental discretion.

Reversed and remanded.