Argued and submitted December 5, 1983, affirmed in part;
reversed in part June 26, 1984

MILLER,
*Respondent on Review,*

*v.*

GRANTS PASS IRRIGATION DISTRICT et al,
*Petitioners on Review,*

MILLER,
*Respondent on Review,*

*v.*

GRANTS PASS IRRIGATION DISTRICT et al,
*Petitioners on Review.*

(TC 77-716-L, 77-731-L;
CA A22052; SC 29673, 29909)

686 P2d 324

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for Petitioner on Review, State of Oregon. With him on the petition were Dave Frohnmayer, Attorney General and James Mountain, Solicitor General, Salem.

Joan L. Volpert, argued the cause for Respondents on Review. With her on the briefs were Lloyd B. Ericsson and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

LINDE, J.

Lent, J., filed a concurring opinion.

**LINDE, J.**

The State of Oregon and the Grants Pass Irrigation District ask us to reverse a decision of the Court of Appeals that they were not immune from tort liability to plaintiffs whose boat was swept over the district's dam on the Rogue River. 62 Or App 747, 663 P2d 30 (1983).[1]

The Court of Appeals summarized the facts as follows:

"The irrigation district owns, operates and maintains the Savage Rapids Dam. The state has jurisdiction to promulgate boating regulations applicable to the waters upstream from the dam and does so through its Marine Board. ORS 488.600(1). In 1957, two people were injured when their boat went over the dam. Subsequently, a warning system consisting of barrels or other flotation devices attached to a cable strung across the river upstream from the dam was designed and erected by local volunteers and the Grants Pass Rural Fire Department, a proprietorship. The cable was customarily put in place in May or June each year and removed in September or October. In at least one year between 1970 and 1976 the cable was not installed at all. Prior to 1976, the fire department requested and received permission from the irrigation district to attach one end of the cable to an iron eyehook set in concrete on district property that had been installed prior to 1955 for dam maintenance purposes. Each spring the irrigation district notified local agencies and media when the dam was about to be closed for summer impoundment. In some, but not all, years the district also directly notified the fire department.

"In June, 1976, a week before the boating accident involved here, the manager of the irrigation district called the proprietor of the fire department to inform her that the dam was closed, and he asked why the marker cable was not yet up. The proprietor said that a boat was needed to string the cable across the river. The manager said he would see what could be done but made no promise to do anything else. No decision was made by the board of the irrigation district to take any action, although the minutes show that the board was aware of the situation. At the time of the accident, the marker cable was still not in place. * * *"

---

[1] *Miller v. Grants Pass Irrigation,* 45 Or App 823, 609 P2d 859 (1980), *vacated* 51 Or App 471, 625 P2d 685 (1981), *rev'd* 62 Or App 747, 663 P2d 30 (1983), *recon. denied* 64 Or App 40, 667 P2d 4 (1983).

62 Or App 749-50, quoting the court's prior opinion, 45 Or App 823, 825-26, 609 P2d 859 (1980).

Plaintiffs' complaints were based on theories of negligence, recklessness, or nuisance, charging that defendants failed to maintain the preexisting warning cable, to install a different warning system or a barrier, or to control or regulate boating behind the dam. The trial court granted each defendant's motion for summary judgment on the ground that each was immune from liability under the Oregon Tort Claims Act (OTCA) exception for discretionary functions or duties.[2] The Court of Appeals reversed, and we allowed review to examine the issue of immunity. No other issue of plaintiffs' theories or allegations is before us.

## I. THE STATE

The state supported its motion for summary judgment with an affidavit by the deputy director of the Oregon State Marine Board. The affidavit stated that prior to the date of the accident, the state board had never participated in maintaining any barrier or warning system immediately upstream from the district's Savage Rapids Dam. After that date, the board adopted rules regulating boating on the Rogue River above the dam. The board had not previously considered, nor been asked to consider, placing a warning marker or otherwise regulating boating at that location.

The legal dispute concerns the question whether the state is immune from potential liability for the board's failure to adopt, or to consider adopting, safety regulations for boating immediately upstream from the dam. The board's authority to do so derives from ORS 488.600(1), which then provided in part:

"After a hearing upon notice, the board, upon consideration of the size of a body of water and traffic conditions, may make special regulations consistent with the safety and the

---

[2] ORS 30.265(3)(c) provides:

"Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

property rights of the public or when traffic conditions become such as to create excessive congestion, relating to the operation of boats in any waters within the territorial limits of any political subdivision of this state. Hearings shall be conducted in accordance with ORS 183.310 to 183.500. The regulations may include, but need not be limited to, the establishment of designated speeds, the prohibition of the use of motorboats and the designation of areas and times for testing racing motorboats. However, designated speeds set by the board shall not apply to commercial vessels documented by an agency of the United States."

The Court of Appeals tested the immunity claims of both defendants under this court's opinion in *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980). *Stevenson,* following *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), distinguished between "governmental discretion or policy judgment," which ORS 30.265(3)(c) immunizes from tort liability, and acts or decisions that do not represent a choice among alternative public policies by persons to whom responsibility for such policies have been delegated and that therefore are not immune. *Stevenson v. State of Oregon, supra,* 290 Or at 9-10. The court observed that sometimes it is clear from a description of the questioned decision or function that it involved governmental discretion; in other situations, immunity would depend on a determination how the particular decision was made.

Applying this analysis, the Court of Appeals in the present case concluded that the immunity of neither defendant could be determined from the nature of the function or from the affidavits and, therefore, that neither was entitled to summary judgment. With respect to the state, the court responded to the state's argument that ORS 488.600(1), *supra,* only authorizes but does not require the State Marine Board to regulate boating:

"The board's decision whether to exercise its authority under the statute may require that a choice be made, but we cannot say that, just by virtue of the permissive language of the statute, the nature of the function it authorizes necessarily requires the making of a governmental policy choice. The affidavits in support of the state's motion for summary judgment indicate that the board never considered regulating the waters upstream from the dam. Without evidence that some decision was made, and how the decision was made, *see*

*Stevenson v. State of Oregon, supra,* we cannot say that the board's failure to require a warning constituted the immune exercise of governmental discretion."[3]

In this court, the state renews its argument that ORS 30.265(3)(c) expressly immunizes it from a claim based on the board's negligent failure to perform a discretionary act as well as one based on its negligent performance. We agree that the quoted passages from the opinion of the Court of Appeals do not adequately meet the state's argument.

Whether "consideration" of a possible regulation is discretionary or mandatory depends on the legal directive delegating that authority or duty, just as is true of the decision whether to adopt a regulation. It is a question of law, although in the absence of a written trail of delegation and subdelegation to subordinate officials it sometimes may depend on a determination of disputed facts. *See Bradford v. Davis,* 290 Or 855, 864-65, 626 P2d 1376 (1981). This is what *Stevenson* meant in saying that evidence of how a decision was made sometimes may be necessary to determine whether an act or omission represented the exercise of delegated policy discretion or the execution of a policy that previously has settled upon relatively concrete ends and means. That determination requires care in tracing the nature of delegated authority. It requires special care when the same body both makes and applies policy on its own authority, as often is true of local governments. But when the act or failure to act is that of the heads of a statutory agency, like the State Marine Board, the question whether they have a nondiscretionary duty to consider possible action simply depends on interpretation of the governing statute or perhaps a previously adopted rule.

Here the issue is answered by the pertinent statute, ORS 488.600. Subsection (1), quoted above, states that the board "may" make any regulations relating to the operation of boats. That is authorizing, not mandatory, language both in

---

[3] In response to the state's petition for reconsideration, the Court of Appeals subsequently explained its decision as follows:

"The only evidence before this court in this case was that the state had given no consideration to the regulation of use of the waters behind the Savage Rapids Dam. In our decision we held only that, under *Stevenson,* because no decision whatsoever had been made, there had been no exercise of policy judgment, and the state had therefore failed to establish its immunity." 64 Or App at 43.

text and in context.[4] There is no reason to believe that the legislature intended the board systematically to study and consider the advisibility of making special regulations for all waters within the state, although the board is authorized to do so if it chooses. Subsection (2) of the statute provides that application for such regulations may be made by the governing body of a political subdivision, in which case "the board shall act upon the application in the manner provided in subsection (1) of this section." ORS 488.600(2). The state's affidavit stated that the Marine Board had never been asked to consider any action with respect to the stretch of the Rogue River in question, and this statement is not disputed by plaintiffs. Under the circumstances, the board had no mandatory duty to consider or to decide whether to consider the subject; either action or inaction was discretionary. The circuit court did not err in granting summary judgment for the state on this claim.

## II. THE DISTRICT

■      With respect to the defendant district, the Court of Appeals first decided that an irrigation district is a "public body" within the definition of that term in the Tort Claims Act, ORS 30.260(2). *Miller v. Grants Pass Irrigation*, 45 Or App 823, 609 P2d 859 (1980). We agree that cases characterizing such districts for other purposes, such as elections, are not authoritative on this issue, and that the Oregon Tort Claims Act applies.

---

[4] In ORS 488.830, by contrast, certain activities are listed as "duties" of the board as well as "powers," implying that the board is directed to undertake them as appropriate to the various items on the list even if the substance of the action to be taken on one or another item may be discretionary. We do not read the general "duty" to "[m]ake all rules necessary to carry out the provisions of this chapter," ORS 488.830(1), to contradict the discretionary nature of the specific authorization to make "special regulations" under ORS 488.600(1).

It should be clear from the foregoing that "rulemaking" is not necessarily a discretionary function. "Rules" may include statements of technical or detailed specifications of a prescribed policy that an agency is mandated to issue without independent policy judgment. On the other hand, statutes or rules may leave even genuine policy choices to be made in case-by-case decisions. For this reason, we do not here review the analogous cases that the parties have helpfully cited; the question does not hinge on case matching but on the legal source and scope of original or delegated policy discretion in the case at issue.

Immunity aside, it is another question whether exercising or failing to exercise a statutory duty to make public rules for private conduct gives rise to civil liability.

The Court of Appeals then examined the district's claim of immunity under the cited passages from *Stevenson.* We note in passing that *Stevenson,* which dealt with "discretion" in the design, selection, construction, or maintenance of roads, traffic signals, or other public facilities, does not state the single relevant analysis; discretion in other kinds of governmental decisions are analyzed, for example, in *Bradford v. Davis, supra* (adoptive home placement by state Children's Services Department); *McBride v. Magnuson, supra* (removal of child from parental custody by city police officer); *Dizick v. Umpqua Community College,* 287 Or 303, 599 P2d 444 (1979) (representations to student regarding college curriculum by community college employees) and in the present case with respect to the regulatory authority of the State Marine Board. *See also Brasel v. CSD,* 56 Or App 559, 642 P2d 696 (1982) (issuance and oversight of day care facility certification by Children's Services Department). But the court's reliance on *Stevenson* is not inappropriate to examining the district's responsibility as the owner of the dam.

■ As to the district's alleged failure to warn, the Court of Appeals wrote:

> "The decision whether to warn people using the river of the dam's presence is not one that falls automatically within the discretionary exception based on the nature of the function. It is not self-evident that the decision requires the kind of policy choices that governmental immunity is designed to protect. * * *

> "Here, the irrigation district has not, by affidavit or otherwise, claimed that it made a policy decision involving the exercise of governmental discretion. Consequently, it was error to grant its motion for summary judgment.[3] * * *"

In the footnote, the court continued:

> "In addition, we question whether it is within the district's discretion not to warn people on the river of the dam's presence, regardless of how the decision is made. * * * Where the public body creates a condition as potentially hazardous to the public as a dam on a river, however, it may have a nondiscretionary duty to warn of the hazard. Although the choice of warning systems is probably within the public body's governmental discretion, the decision whether to warn at all may not be."

62 Or App at 753, n. 3. We agree. If there is a legal duty to protect the public by warning of a danger or by taking preventing measures, or both, the choice of means may be discretionary, but the decision whether or not to do so at all is, by definition, not discretionary.

This is so whether the duty derives from statutory or from common law. If one were to imagine a statute that requires every operator of a dam to take such precautions to avoid predictable risk of harm as may be reasonable under the conditions of the site and its foreseeable uses, the operator would have a nondiscretionary duty at least to examine what to do. The same is true if the facts give rise to a corresponding duty at common law. The law itself has made that much of a policy choice. When different precautions might satisfy this duty, however, the choice of which one to use may be discretionary.

ORS 30.265(3)(c) provides immunity against "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty." A claimant might argue that when safety precautions of some kind are obligatory, the function or duty simply is not discretionary and ORS 30.265(3)(c) does not apply. But this would mean that even when a precaution is chosen, negligence in making that choice, that is to say, in the performance of the function, is no more immune than failure to perform it altogether. A defendant, in turn, might argue that as long as the choice among different precautions involves significant elements of policy, taking into consideration competing values, consequences, and priorities, the function is discretionary, and total disregard of the duty is as immune as failure to perform it before the injury has occurred.

The concept of a "discretionary function or duty" is notoriously obscure and difficult, but we do not believe the legislature intended either of these extreme results. One extreme would swallow up the concept of discretion by holding a public body liable whenever it is found not to have actually satisfied its tort duty. The other extreme would put a premium on ignoring the duty and simply failing to exercise the function of choosing among safety measures. The dilemma posed by the statute is not inescapable. Rather, we conclude that the

line runs between the extremes. The line runs between deciding whether to take precautions, a duty which under the circumstances of a particular case may not be discretionary, and deciding what precautions to take, which may or may not involve discretionary policy issues. That question, in turn, depends on the kind of examination set out in *Stevenson v. State of Oregon, supra,* and the other decisions cited above.[5]

■ The district's chief argument in this court is that it made "no decision," or "determined not to exercise its discretion in considering" to "extend its jurisdiction above the Savage Rapids Dam."[6] This describes a discretionary choice only if indeed the district had no legal duty either to warn of the danger to boaters or to prevent it. To repeat, if the district had such a legal duty, it had no discretion to "determine not to exercise its discretion" to choose one or another course of action, though the choice itself might be the exercise of discretion. Because ORS 30.265(3)(c) provides immunity for failure to exercise a discretionary function or duty but not for failure to undertake a nondiscretionary function or duty, it follows that the district would not be immune for wholly disregarding and declining to consider whatever duty it had under tort law. It would, however, be immune if upon weighing competing policy considerations it failed to reach a decision, to make a discretionary choice, before the injury occurred. The district's evidence in support of its motion for summary judgment does not establish a defense that the district considered but failed to resolve the safety question at the policy level, but of course the district may pursue this issue at trial.

---

[5] For example, we said in *Stevenson* that "[o]ne clue to whether governmental discretion was exercised is to examine the level of administration at which the decision claimed to be 'discretionary' was taken and whether there is evidence of delegation of responsibility for policy choice to that level, as distinguished from the routine decisions which every employe must make in every action he or she takes." *290 Or* at 14. We continued with an example from the area of road maintenance: A budgetary decision which of two highways to repave, as distinct from examining where repairs were needed and how to make them. *Id.* at 15. Similarly, simple disregard of any concern about dangerously icy highways might not be within governmental discretion, even when negligent performance in deciding which highways to sand or close, or failure to reach a decision, might be discretionary if it involved policy choices but not if it is a routine decision delegated to field operations. *See id.* at 10-11, and *cf. Hall v. State of Oregon,* 290 Or 19, 619 P2d 256 (1980).

[6] We are not persuaded by the district's references to "extending its jurisdiction" above the dam. The district neither argues nor shows that the preexisting cable across the river was unlawful or that there was no way to warn boaters against being carried over the dam that would be within the district's legal power.

■     The existence and extent of a nondiscretionary legal duty in a given situation may itself be disputed. To that extent, the question of immune discretion may overlap with one issue of tort liability, an issue that may or may not depend on a determination of disputed facts. Immunity in this case depends on a determination of the district's legal duty to consider risks to boaters under the factual circumstances. According to testimony submitted in connection with the motion for summary judgment, responsible officials of the district knew that some persons previously had been swept over the dam, and the manager had telephoned the fire department to find out why the usual cable across the river had not been installed. But the manager also testified that the district's records do not show consideration of adopting safety measures and the board chairman testified that the board had not considered hazard to boats to be "any responsibility of the district."

On this record, the Court of Appeals was correct in reversing the summary judgment for the district and remanding the case for such further proceedings as may be appropriate.

The decision of the Court of Appeals is affirmed as to defendant Grants Pass Irrigation District. As to the State of Oregon, the decision is reversed and the circuit court's judgment is reinstated.

**LENT, J.,** concurring.

I concur in the result as to both defendants. I write separately to call attention to a statutory textual problem, which could be ameliorated, if not obviated, by the legislature now that we have had some 16 years of experience under the Oregon Tort Claims Act.

We are concerned in this case with the immunity from liability for:

> "[ORS 30.265(3)] (c) Any claim based upon the performance of or the failure to exercise or perform a *discretionary function or duty,* whether or not the discretion is abused." (Emphasis added.)

The first question which leaps to mind is whether the adjective "discretionary" was intended to modify both of the nouns "function" and "duty." All of our decisions involving this

statute seem to assume that it does. This is probably a correct interpretation of legislative intent if for no other reason than the reference to "discretion" in the clause immediately following the word "duty."

I have no difficulty in envisioning a discretionary function. I think one of the most obvious examples is one present in the case at bar. ORS 488.600(1) grants to the Oregon State Marine Board power or authority to "make" described regulations but does not require the Board to make regulations. The statutory grant of immunity protects this state agency in choosing whether to adopt regulations, a decision requiring consideration of a range of policy factors and depending upon described local conditions.

As cases have been presented to this court, however, in which immunity has been claimed under ORS 30.265(3)(c), the litigants have not sought to differentiate between discretionary function and discretionary duty; rather, they have presented the claim in the same way as has the legislature worded the statute, i.e., as if the four words underscored above embraced but a single concept. These presentations have led the court into doing the same. I am not at all sure that this leads to principled analysis.

I do have trouble envisioning a discretionary duty. ORS 30.265(1), speaking generally, makes the state or a local public body liable for its torts. In order for there to be a tort the actor must breach some duty imposed by law, that is, by legislative enactment (statute, rule, regulation, charter, ordinance, etc.) or the common law. The duty must be identified and proclaimed to exist by a court, as a matter of law, not fact. A duty either exists or it does not. The law either commands someone to act, or refrain from acting, or it does not.

In this case, the Irrigation District chose to build and operate a dam. Having done so, it should be held to the same duty as would any person, natural or corporate, have in the operation of a dam and the impoundment of water, to protect those on the water from an unreasonable risk of harm arising from the District's activities in this respect. If legislation or the common law imposes a duty on a dam operator in these circumstances, there is nothing "discretionary" about the existence of the duty, nor can it be described by that adjective.

There may be, and probably is, room for discretion in choosing the manner of performance, both for a private person or a public agency, but the duty must be performed and the standard of care required by the duty must be achieved.

To sum up, a discretionary function is one concerning which the governmental agency involved has power to make a choice among valid alternatives, but if there is a duty imposed by law there is no choice but to obey. If there is no duty, to which adherence is required, then the agency is concerned with a function rather than a duty. I really don't know what a discretionary duty looks like.