Argued and submitted July 18, affirmed in part and reversed in part on appeal; cross-appeal dismissed as abandoned September 4, 1996, petition for review denied February 11, 1997 (324 Or 654)

Sharon M. DAY,
*Respondent,*

*v.*

CITY OF CANBY,
*Appellant - Cross-Respondent,*

*and*

Creslin J. DERKACHT,
*Appellant - Cross-Appellant,*

*and*

Christina L. ROBERTS;
Gregory Derkacht and Barbara Jeanne Derkacht,
*Defendants.*

(CCV9306153; CA A85029)

922 P2d 1269

Michael A. Lehner argued the cause for appellant - cross-respondent. With him on the briefs was Lehner, Mitchell, Rodrigues & Sears.

Jeffrey W. Hansen argued the cause for appellant - cross-appellant. With him on the briefs were Jay R. Chock and Smith, Freed, Heald & Chock, P.C.

Robert A. Miller argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Plaintiff brought this action against defendants Creslin Derkacht (Derkacht) and City of Canby (City) to recover for injuries she suffered when she was struck by a runaway horse.[1] The jury found for plaintiff. Defendants appeal the trial court's denial of their motions for directed verdicts. We affirm with respect to Derkacht and reverse with respect to City.

On July 4, 1991, the Canby Arts Association (Association) sponsored a parade in downtown Canby similar to ones that it had organized since 1982 as part of the annual General Canby Days celebration. The City's involvement consisted of granting permission to hold the parade and directing Association to coordinate planning with City's police chief and director of public works. The public works department supplied barricades to Association volunteers who placed them to create the parade route. Association provided the police chief with a description of the parade route. The police chief assigned additional officers to work on the day of the parade and directed one officer to start the parade and indicate its end by driving the route in a marked car. The map of the parade route that was printed in the local newspaper did not designate a starting or staging area, but entry forms advised participants to set up for the parade behind the grade school in Canby.

Derkacht was a member of a 4-H group that rode horses in the parade. When she and the 4-H group arrived with their horse trailers on the morning of the parade, people wearing badges or ribbons directed them towards the school and moved barricades to allow them through. Derkacht's mother and the rest of the 4-H group parked their horse trailers near some other trailers that were parked on a residential street approximately two blocks away from the City park where food vendors and craft booths were located.

When they completed the parade route on their horses, Derkacht's group discovered that they could not

---

[1] Defendants Christina Roberts, Barbara Derkacht and Gregory Derkacht are not parties to this appeal.

return to their trailers without cutting through the end of the parade. They waited about a half hour before they were able to return to the trailers and begin untacking their horses. Derkacht's horse wore a western saddle that had two cinches. While a friend held the horse's halter, Derkacht unbuckled the front cinch. As Derkacht was about to undo the rear cinch, firecrackers, apparently thrown by unidentified youths, exploded near the horses. Derkacht's horse bolted, pulled away from Derkacht and her friend, and ran towards the park, which was crowded with people. As the horse ran, the saddle slipped underneath it, cutting into its rear legs. The horse struck plaintiff from behind as it ran down the street. Plaintiff was injured severely.

Plaintiff filed this negligence action against defendants. In her amended complaint, she alleged that Derkacht was negligent in failing to: (a) maintain control of her horse; (b) adequately instruct her friend as to how to maintain control of the horse; (c) properly unsaddle her horse by first unfastening the back cinch and thereafter unfastening the front cinch; and (d) tie the halter rope to her horse trailer before attempting to unsaddle the horse. Plaintiff alleged that City was negligent in the following ways:

"a. In failing to take adequate safety precautions to prevent a frightened or spooked parade horse from injuring members of the public who were present in or near Waite Park, such as Plaintiff;

"b. In failing to prohibit the use of fireworks during and following the parade, especially in the vicinity of horses which participated in the parade;

"c. In failing to instruct members of the public not to use fireworks during and following the parade, especially in the vicinity of horses which participated in the parade;

"d. In failing to require the Canby Arts Association to design a parade route that included a parade staging area for the loading and unloading of horses a safe distance away from Waite Park.

"e. In failing to require the Canby Arts Association, the Canby Public Works Department, and the Canby Police Department to provide barriers between the horse loading and unloading area and Waite Park.

"f. In failing to require the Canby Arts Association, Canby Public Works Department, and Canby Police Department to provide adequate personnel for crowd control in and around the loading and unloading area for horses at or near the end of the parade route."

At the close of plaintiff's case, and again at the close of all the evidence, defendants each moved for a directed verdict or, in the alternative, to strike certain of plaintiff's allegations. Plaintiff dropped the allegation that Derkacht had failed to adequately instruct her friend on how to maintain control of the horse. The trial court denied Derkacht's motion for a directed verdict and her motion to strike plaintiff's allegation that Derkacht was negligent in unsaddling the horse. The trial court also denied City's motions for a directed verdict. However, based on City's claim of immunity under ORS 30.265 *et seq*, it granted City's motion to strike plaintiff's first three allegations against it. The jury returned a verdict for plaintiff, finding Derkacht 15 percent and City 85 percent liable for plaintiff's damages.

On appeal,[2] Derkacht assigns error to the trial court's denial of her motion for a directed verdict. She contends that plaintiff did not produce any evidence that Derkacht was negligent in failing to properly unsaddle her horse. City assigns error to the trial court's denial of its motion for a directed verdict. It contends that its liability for plaintiff's remaining allegations is precluded by the discretionary immunity granted to it by ORS 30.265(c)(3).

In reviewing the denial of a motion for a directed verdict, we consider the whole record, *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990), and we view the evidence, including inferences, in the light most favorable to the party opposing the motion. A directed verdict is appropriate only if there is a complete absence of proof of an essential issue, if there is no conflict in the evidence and it is susceptible of only one construction, *Adams v. Knoth*, 102 Or App 238, 242, 794 P2d 796, *rev den* 310 Or 422 (1990), or

---

[2] Derkacht filed her appeal, then subsequently filed a cross-appeal, apparently in response to City's appeal. Her appellant's brief makes no reference to the cross-appeal, but in her reply brief she argues that City is not entitled to discretionary immunity. We dismiss the cross-appeal as abandoned.

if the moving party is entitled to judgment as a matter of law. *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994).

■     We first address Derkacht's contention that plaintiff produced no evidence that Derkacht negligently unsaddled the horse.[3] At trial, plaintiff presented witnesses who testified that the proper way to unsaddle a horse wearing a double cinch western saddle is to unfasten the back cinch first, then unfasten the front cinch. Those same witnesses also testified that, after a strenuous ride, it is appropriate to loosen the front cinch before unfastening the back cinch so that the horse can breathe more easily and will not suffer from "girth gulp." Derkacht contends that, except for one witness who was unfamiliar with the proper procedure, "each of [the witnesses] agreed that it was not negligent to loosen the front cinch of a double cinch western saddle before unsaddling the horse[.]"

Plaintiff responds that the record is "replete with testimony and exhibits" from which the jury could reasonably conclude that Derkacht negligently unsaddled her horse after the parade and that her negligence was a substantial factor in causing injury to plaintiff. The record supports plaintiff's contention. Because our standard of review is limited to whether there is *any* evidence in the record that would support the trial court's denial of a motion for a directed verdict, we provide only one example. When asked at deposition what procedure she used to unsaddle her horse on the day of the parade, Derkacht testified:

Derkacht:   "Well, first I took off his—took off his bridle, put on his halter, took off the breast halter. And while I was taking off my bridle, Christina had come over so I asked her to please hold Bruuk. And so she did. And then I started uncinching the saddle.

---

[3] Derkacht's second assignment of error—that there was no evidence that she was negligent in failing to tie the horse to the trailer before attempting to unsaddle it—was not preserved. Consequently, we do not consider it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

Q: "And what cinch did you start with?

Derkacht: "The front cinch.

Q: "okay. And how far did you get along before he spooked?

Derkacht: "Not very far. I just—I think I—because it was a buckle and it wraps, I think I had just unbuckled it *but I had not started unwrapping it yet.*

"* * * * *

Q: "Was it your normal procedure to unfasten or loosen the front cinch first?

Derkacht: "I did it either way.

Q: "Sometimes you will start with the back and *sometimes you will start with the front*?

Derkacht: "Yeah." (Emphasis supplied.)

In that deposition, Derkacht made no reference to loosening the front cinch to allow the horse to breathe. At trial, however, she testified that she unbuckled the front cinch to let her horse breathe because "it was so hot that day." On cross-examination, she was asked if she "normally unbuckle[d] the cinch in order to loosen the cinch a little." She responded:

Derkacht: "Sometimes I would.

Q: "But most of the time you didn't, did you?

Derkacht: "I did it either way. I mean, it just depended if I was completely—you know, if that's all, I guess. .

Q: "Okay. When you unbuckle your particular cinch, that means that *the only thing holding that cinch on are the wraps, 1, 2, 3 or however many wraps you make with the leftover latigo, correct*?

Derkacht: "Right." (Emphasis supplied.)

She also testified:

Q: "So in [*sic*] this particular occasion, it's your testimony that you weren't really starting to unsaddle the horse; all you were doing with the

front cinch was just loosening up so your horse could breathe?

Derkacht: "No, I was starting to unsaddle him.

Q: "Okay. So *your unsaddling process was starting with the front cinch and not the back one, correct?*

Derkacht: "Yes. Yes." (Emphasis supplied.)

That testimony is evidence from which the jury could conclude that she was in the process of unfastening the front cinch, not simply loosening it, when the horse bolted.

Nonetheless, Derkacht contends, there is "no evidence that [her] alleged negligence in unsaddling the horse was in any way connected with plaintiff's injuries." We disagree. Several witnesses testified that the dangling saddle cut the horse's legs. From this testimony, the jury could conclude that Derkacht's failure to first unfasten the back cinch contributed to the horse's flight and that such negligence was a cause of damage to plaintiff. The court did not err in denying Derkacht's motion for a directed verdict.

We turn to City's assignment of error. It contends that the trial court erred in denying its motions for a directed verdict, because "[a]ll public bodies in this state are immune from tort liability for acts of negligence [that] occur in the exercise of discretionary function or duty." Furthermore, it contends, "[o]n their face, plaintiff's [remaining three] allegations charge the City Council with negligence in failing to exercise its legislative or management authority to direct others to take certain precautions," functions that are within the scope of immunity granted by ORS 30.265 *et seq*. In its view, it is "axiomatic that the immunity granted by the statute applies, even if the fact finder * * * might believe more should have been done by [City] to protect plaintiff." That is so, it contends, because ORS 221.410 provides that City "*may* take all action necessary or convenient for the government of its local affairs." (Emphasis in original.)

Plaintiff responds that City has the burden of proving immunity and that the only decision protected by discretionary immunity was City's decision to allow Association to conduct the parade and celebration within city limits,

thereby opening its streets and parks to the public for that particular purpose. In her view, all other decisions made by City in conjunction with the parade were ministerial in nature. In the alternative, plaintiff argues, City cannot rely on statutory immunity, because it owed plaintiff a duty of care to keep her free from harm caused by the negligent or intentional acts of third persons or animals on its land. She relies on *Miller v. Grants Pass Irrigation*, 297 Or 312, 686 P2d 324 (1984), for the proposition that "if the City had a legal duty, derived from statute, ordinance or common law, to protect the public from a particular danger, the choice of means for doing so may be discretionary, but the decision whether or not to do so at all is not discretionary and not immune from liability."

ORS 30.265 (3) provides, in part:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties, * * * are immune from liability for:

"* * * * *

"(c)  Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Immunity under ORS 30.265(3)(c) extends to decisions for which there is evidence that a policy judgment has been made by a person or body with governmental discretion. *Little v. Wimmer*, 303 Or 580, 588, 739 P2d 564 (1987). The burden of establishing immunity is on the public body claiming it. *Stevenson v. State of Oregon*, 290 Or 3, 15, 619 P2d 247 (1980). Immunity does not shield from liability the routine decisions made by employees in the course of their day-to-day activities, even though those decisions may involve choices among two or more courses of action. *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990). In some cases, a determination of whether immunity applies is not possible until it is known how the particular decision was made. In other cases, a mere description of the decision in question will make it clear that governmental discretion was necessarily involved. *Stevenson*, 290 Or at 14.

In the context of these legal considerations, we turn to City's contention that the trial court erred in denying its motions for a directed verdict, because it is immune under ORS 30.265(3). City contends that "when considering possible immunity for an executive level department of a public body, the court looks to the source of its authority to decide whether its action was discretionary." It relies on *Miller* as a "clear example" of that principle and relies on *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 843 P2d 415 (1992), as a "recent discussion" of discretionary immunity that supports its contention that the trial court erred in denying its motions for a directed verdict on the ground of discretionary immunity.

In *Miller*, the plaintiffs sued the Oregon State Marine Board (Board) and the Grants Pass Irrigation District (District) for injuries sustained when their boat was washed over a dam owned by the District. The plaintiffs alleged that the Board and the District were negligent in failing to maintain a warning cable, install a warning system or barrier and control or regulate boating behind the dam. Both the Board and the District claimed immunity from liability under ORS 30.265(3)(c) and the trial court granted their motions for summary judgment on that ground. 297 Or at 315. The Supreme Court affirmed with respect to the Board, because the board's enabling statute, ORS 488.600(1), provided that the Board " '*may* make special regulations consistent with the safety * * * of the public.' " *Id.* at 315-16. (Emphasis supplied.) The court ruled that the board had no mandatory duty to consider or to decide whether to consider any safety issues related to the dam and concluded that "either action or inaction was discretionary." *Id.* at 318.

With respect to the District, by contrast, the *Miller* court held that summary judgment was inappropriate, because "[i]mmunity in this case depends on a determination of the district's legal duty to consider risks to boaters under the factual circumstances." *Id.* at 322. There was evidence that District officials knew that people previously had been swept over the dam and there was also evidence that the District did not consider hazards to boaters to be " 'any responsibility of the district.' " *Id.* The court concluded that "*if* the district had * * * a legal duty [to warn of the danger from the

dam or prevent it], it had no discretion to 'determine not to exercise its discretion' to choose one or another course of action, though the choice itself might be the exercise of discretion." *Id.* at 321. (Emphasis supplied.) The court remanded the case for a determination of the District's legal duty to consider risks to boaters under the factual circumstances. *Id.* at 322.

■■ City contends that the reasoning as to the Board in *Miller* is equally applicable here. We disagree. ORS 488.600(1) delegates discretion to the Board with respect to decisions regarding public safety. ORS 221.410, by contrast, delegates discretion regarding the conduct of its governmental affairs. Use of the word "may" in both statutes does not make them comparable. Nonetheless, plaintiff's only contention regarding *Miller* is that City, like the District in *Miller*, owed her a legal duty to warn or protect her. The flaw in plaintiff's argument is that it assumes that the court's decision in *Miller* was based on a theory of premises liability. That is a misreading of *Miller*. The court did not reverse the trial court's grant of summary judgment to the district on the basis of premises liability. Rather, it ruled that "immunity in this case depends on a determination of the district's legal duty to consider risks to boaters under the factual circumstances." *Id.* at 322. Plaintiff cites no authority, and we find none, holding that a municipality can be liable under a premises liability theory for accidents that occur within its limits.

City also contends that the Supreme Court's recent decision in *Mosley* and our decision, *Mosley v. Portland School Dist. No. 1J*, 108 Or App 7, 813 P2d 71 (1991), addressed allegations similar to plaintiff's and that those decisions provide additional authority for its claim of discretionary immunity. It contends that under the reasoning in the two *Mosley* decisions, none of plaintiff's specifications of negligence against City should have been submitted to the jury. Plaintiff argues that *Mosley* is "clearly distinguishable."

In *Mosley*, the Supreme Court held that where a school district's student was injured in a fight involving a knife at the school, the district was entitled to immunity under ORS 30.265(3)(c). The plaintiff in that case had alleged that the school district and its officials, including the school's

principal, had failed to (1) exercise proper supervision of students, (2) provide proper security and sufficient security personnel, (3) prevent weapons from being carried into the school building, and (4) stop an attack before a knife was used. *Mosley*, 315 Or at 87. On appeal from a jury verdict for the defendant, we held that the defendant was immune as a matter of law with respect to the second and third allegations. *Mosley*, 108 Or App at 10-11. The plaintiff did not seek review of that holding. *Mosley*, 315 Or at 89. The Supreme Court subsequently held that the allegation regarding failure to exercise proper supervision of students also was insufficient as a matter of law, because it, too, involved the exercise of discretion. With respect to the defendant's liability for failing to stop the attack before a knife was used, the court ruled that the defendant was entitled to judgment as a matter of law, because the evidence at trial, viewed in the light most favorable to the plaintiff, would not permit a jury to find that the defendant had specific knowledge that the fight was occurring or would occur. *Id.* at 93-94.

Plaintiff concedes that the three allegations in *Mosley* that were held to be insufficient on their face are similar to the remaining allegations in this case: failure to require Association to design a proper staging area; failure to require Association, the police department and the public works department to provide barriers; and failure to require Association, the police department and the public works department to hire adequate personnel for crowd control. Nonetheless, she contends,

> "neither the City nor its officials testified that they considered the safety to the public as it related to danger from horses. They made no choice whatsoever regarding security or personnel for crowd control."

Therefore, she contends, City is not entitled to immunity under *Mosley*. We disagree with plaintiff that that difference provides a meaningful basis for distinguishing this case from *Mosley*.

It is undisputed that City did consider safety to the public when it granted the parade permit to Association. It directed Association to coordinate planning with the police and public works departments and Association did so. The

department of public works provided Association with barricades to mark the parade route and the police department assigned additional officers and reserve officers to work on the day of the parade. Plaintiff's reasoning— that City is not entitled to discretionary immunity, because it did not consider the specific dangers to the public from horses—would extend liability to City for every conceivable danger that could occur when it grants a parade permit and someone is injured at that parade. Such reasoning would assign courts the role of deciding whether governmental entities and their officials had adopted proper policies or whether a given course of action was effective in furthering a given policy. That is not our function. *Stevenson*, 290 Or at 10. City's decisions about public's safety are "classic policy choices that are entitled to discretionary immunity." *Mosley*, 315 Or at 93. The trial court erred in denying City's motions for a directed verdict on the ground of discretionary immunity.

In the light of this disposition, we need not address City's other arguments or assignments of error.

On appeal, affirmed as to Creslin J. Derkacht and reversed as to City of Canby. Cross-appeal dismissed as abandoned.