Argued and submitted September 6, reversed and remanded December 14, 2011

Erin SMITH,
*Plaintiff-Appellant,*

*v.*

BEND METROPOLITAN PARK
AND RECREATION DISTRICT,
a municipal corporation,
*Defendant-Respondent.*

Deschutes County Circuit Court
08CV0777AB; A146575

268 P3d 789

Tim Williams argued the cause for appellant. With him on the briefs was Dwyer Williams Potter Attorneys, LLP.

Thomas W. McPherson argued the cause for respondent. With him on the brief was Mersereau Shannon, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

While running to prevent a child from falling into the water at a city swimming pool, plaintiff slipped on a "splash pad" and slid into a slightly elevated fountain fixture, seriously injuring her ankle. She brought this negligence action against defendant, the City of Bend Metropolitan Park and Recreation District, alleging four specifications of negligence.[1] Two dealt with defendant's decisions to choose and place the fountain fixtures, and two dealt with defendant's failure to provide adequate warnings about them. After cross-motions for summary judgment, the trial court granted defendant's motion on the grounds that, first, the choice of a fountain cover design and the placement of the fountains were discretionary decisions for which defendant had immunity as a matter of law, and second, that plaintiff did not adduce any evidence of causation connecting plaintiff's injuries to defendant's failure to warn. Plaintiff appeals. We reject plaintiff's assignment of error regarding causation with little discussion. Uncontradicted evidence supports the court's finding that plaintiff knew of the dangers at the pool, and where an injured party is "fully aware of the danger presented," there is no causation. *Garrison v. Deschutes County*, 334 Or 264, 279, 48 P3d 807 (2002). Further, plaintiff testified, "I don't know of a warning that [defendant] could have placed" that would have prevented her from running across the splash pad to keep a child out of harm's way.

However, we conclude that the trial court erred in granting defendant's motion for summary judgment as to the two specifications of negligence regarding the choice and placement of fountain covers, because there is evidence in the record on summary judgment from which a trier of fact could find that defendant's decisions regarding the design and placement of the fountains did not require the exercise of discretion within the meaning of ORS 30.265(3). We therefore reverse the trial court in part and remand.

In reviewing the court's grant of summary judgment, we view the facts and all reasonable inferences in the

---

[1] Plaintiff also brought claims based on alleged violations of Oregon administrative rules dealing with pool decks. Those claims were dismissed, and plaintiff does not assign error to the dismissal.

light most favorable to the nonmoving party, in this case, plaintiff. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We will affirm the trial court's ruling granting defendant's motion for summary judgment if there is no genuine issue of material fact and defendant was entitled to judgment as a matter of law. ORCP 47 C.

Defendant's Juniper Swim & Fitness Center in Bend has an outdoor children's pool next to a large padded deck, the "splash pad," on which there are a variety of interactive play features, including eight spray fountains. Each fountain has a circular, metal fountain cover that tapers up to a maximum height of about one-half inch above the surface of the splash pad.

Plaintiff was at the pool with a friend and was familiar with its features, including the fountains. When she ran onto the splash pad to prevent a child from darting into the pool, she slipped and slid approximately two and a half feet. Her right foot caught on one of the raised fountain covers, causing her injury.

Plaintiff initiated this action alleging, among other particulars, that defendant was negligent in "causing or allowing an obstruction (the raised interactive fountain cover) to exist on the pool deck where customers would walk" and in "causing or allowing the pool deck to become slippery around the raised interactive fountain covers." Defendant asserted the affirmative defense of discretionary immunity under ORS 30.265(3)(c), which provides:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:
>
> "* * * * *
>
> "(c)  Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

On cross-motions for summary judgment, the parties disagreed about whether defendant's decision regarding the selection and placement of the raised interactive fountain cover was the type of decision that was subject to discretionary immunity. Defendant offered the affidavit of Don Horton,

defendant's executive director, who averred that the fountains and other interactive features were added as a part of an expansion of an existing pool. In planning for the expansion, defendant retained the services of an architect and aquatic consultant to develop a master plan. Defendant's board of directors adopted the expansion plan developed by the architect and aquatic consultant and approved of a contract with the architect. The architect, aquatic consultant, and district staff then collaboratively developed the design for the renovation of the pool, and defendant's board of directors reviewed and approved the design and budget and directed staff to proceed. Horton averred that

> "the splash pad surface option was selected because the membrane provided a durable, water impermeable, sanitary and slip resistant surface while the underlying pad provided cushion for comfort. The specific spray features were selected based on their quality, entertainment value and ability to interface with the membrane line to provide a safe, water tight seal."

Horton's statement, couched as it was in the passive voice, did not specify by whom the surface option and the spray features were selected.

However, Matthew Mercer, the project manager for the expansion of the pool, testified that, although defendant's board of directors reviewed different types of pools, different configurations, capacities, values, and benefits, including the fountain and splash pad, *he* selected the system that was ultimately put in place. In response to the question, "Who made the decision to go with the Vortex [fountain cover] in terms of the type of spray fountains?" he responded:

> "A.   Like I said, that decision would have been made by me in conjunction with the aquatic consultant and [the architect and] * * * the design team as a whole.
>
> "Q.   Just given your position of manager of the pools out there, that decision, is it true, would fall into more of your day-to-day in terms of business when you have been * * * hired?
>
> "* * * * *
>
> "A.   It would.

"\* \* \* \* \*

"Q.  Did the board, either in writing or orally, give you a written directive in terms of what type of either matting or cover to use?

"A.  No."

Mercer clarified that the pool and splash pad were designed and built as a single facility and that there were not separate deliberate decisions relating to the placement of the fountains on the splash pad portion. Based on that evidence, the trial court concluded that defendant's decisions regarding the choice and placement of the fountain feature were the type of policy-making decision to which immunity attaches under ORS 30.265. Plaintiff appeals.[2]

A significant body of case law addresses the question whether a particular governmental decision or function is discretionary for purposes of ORS 30.265(3). The classic discussion comes from *McBride v. Magnuson*, 282 Or 433, 436-37, 578 P2d 1259 (1978):

"[N]ot every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' \* \* \* or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued.' \* \* \* It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action \* \* \*. In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of

_____

[2] In order for the court to consider a challenge to a ruling, the ruling must be assigned as error. *See* ORAP 5.45(2). Plaintiff has not properly assigned error to the trial court's rulings on cross-motions for summary judgment. Plaintiff's assignments of error are to the trial court's *conclusions* that defendant's actions or failures to act are protected by discretionary immunity and that there was an absence of evidence to support the specification of negligence involving failure to warn. These are improper assignments of error. However, because it is clear from the briefs, including the described standards of review and argument, that plaintiff intends to assign error to the trial court's rulings on summary judgment, we treat the assignments as having challenged those rulings.

costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment."

Somewhat more succinctly, discretionary immunity protects actions that embody "a choice among alternative public policies by persons to whom responsibility for such policies have been delegated." *Miller v. Grants Pass Irrigation District*, 297 Or 312, 316, 686 P2d 324 (1984). We have parsed that formulation as follows:

"This statement identifies three criteria that a government function or duty must meet in order to qualify for discretionary immunity. It must be the result of a *choice*, that is, the exercise of judgment; that choice must involve public *policy*, as opposed to the routine day-to-day activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the *responsibility* or authority to make it."

*Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931 (2002) (emphasis in original).

In the present case, the court ruled in favor of defendant's affirmative defense of immunity on the ground that defendant's board of directors "made a policy decision regarding the type of pool, configuration and play features," and that the decision "involved the assessment of costs and benefits and making choices among competing options"—in other words, that defendant's board made a *choice*, and that the choice was a *policy* decision within the board's discretionary *authority*. Defendant, of course, agrees, explaining that, in selecting the splash pad and spray fountains, defendant had to consider and prioritize at least 10 competing qualities, safety among them: "Durability, water impermeability, hygiene, slip resistance, comfort, entertainment value, safety, water tight seal, and compatibility of the spray fountains with the splash pad." In defendant's view, prioritizing those qualities was a policy-driven discretionary decision.

In support of its understanding of the discretionary immunity analysis, defendant relies on this court's opinion in *Day v. City of Canby*, 143 Or App 341, 922 P2d 1269 (1996).

In *Day*, the plaintiff brought an action against the city to recover for injuries she suffered when she was struck by a runaway horse that, after a parade, had bolted after being frightened by a firecracker. The plaintiff alleged, among other specifications, that the city was negligent in failing to require the design of a proper staging area; failing to require the provision of barriers; and failing to require the hiring of adequate crowd control. The city asserted that its liability was precluded by discretionary immunity. The plaintiff contended that the only decision by the city that was protected by discretionary immunity was the decision to have the parade, and that all other decisions made in conjunction with the parade were ministerial in nature. The trial court held, without amplification, that the decisions that had formed the basis for plaintiff's negligence allegations involved the exercise of discretion and were therefore immune. The court explained:

> "It is undisputed that City did consider safety to the public when it granted the parade permit to [the Canby Arts Association (Association)]. It directed Association to coordinate planning with the police and public works departments and Association did so. The department of public works provided Association with barricades to mark the parade route and the police department assigned additional officers and reserve officers to work on the day of the parade. Plaintiff's reasoning—that city is not entitled to discretionary immunity, because it did not consider the specific dangers to the public from horses—would extend liability to City for every conceivable danger that could occur when it grants a parade permit and someone is injured at that parade. Such reasoning would assign courts the role of deciding whether governmental entities and their officials had adopted proper policies or whether a given course of action was effective in furthering a given policy. That is not our function. *Stevenson* [*v. State Dept. of Transp.*], 290 Or [3, 10, 619 P2d 247 (1980)]. City's decisions about public's safety are 'classic policy choices that are entitled to discretionary immunity.'"

143 Or App at 353 (quoting *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 93, 843 P2d 1259 (1978)).

Defendant's contention and its reliance on *Day* miss the point and fail to take into consideration one of the essential aspects of immunity analysis: delegation. In *Day*, the

decision-maker whose immunity was at issue was "the City," and the particular issue was whether "the City" had failed to take a variety of safety precautions. 143 Or App at 344. If it were beyond dispute that the decisions regarding the choice and placement of the fountain covers in this case were made by defendant's board, *Day* might be instructive. But that is not the case. There is at least a disputed issue of fact with respect to who had the authority to make those decisions. It is inferable from the testimony of Mercer, the board's project manager, that the decisions were delegated to him; as noted above, in response to the question, "Did the board, either in writing or orally, give you a written directive in terms of what type of either matting or cover to use?" He replied, "No." Thus, the question in this case is not whether the defendant, acting as a board, made a design decision that resulted from the weighing of competing policy considerations, including safety. Arguably, it did, but that is not relevant. The relevant question in this case is whether the board delegated those decisions to Mercer and, if so, whether Mercer's decisions are immune. Put another way: The question involving whether the decision to choose the particular components that allegedly caused plaintiff's injury was the exercise of discretion is intertwined with the question involving whose decision counts. The evidence at least raises the possibility that the decision was delegated to Mercer. His decision is the one that counts.

Two recent cases illustrate the importance of correctly identifying the person or persons to whom authority to make decisions has been delegated, and confirm that, in this case, that person is Mercer. In *Vokoun v. City of Lake Oswego*, 335 Or 19, 33, 56 P3d 396 (2002), the defendant argued that it had immunity in an action brought by a homeowner whose property was damaged by erosion resulting from the city's presumably negligent decisions regarding the acquisition and improvement of a drainage course.[3] The Supreme Court rejected that argument, explaining that the proper focus was not on the city's policy choice reflecting

---

[3] We say "presumably" because the immunity defense presumes the existence of a negligent act or decision.

economic priorities, but on the decision by maintenance employees about how to repair the erosion:

> "Maintenance employees decided to repair the erosion by filling the hole with asphalt debris. The decision how to respond to the erosion problem about which plaintiffs had complained was a routine decision made by employees in the course of their day-to-day activities. Such decisions do not qualify for discretionary immunity."

*Id.* Of similar effect is *John v. City of Gresham*, 214 Or App 305, 307, 165 P3d 1177 (2007). In that case, the plaintiff brought an action for damages resulting from a presumably negligently designed urban intersection. Defendants raised the affirmative defense of immunity, arguing that the design decision was the exercise of policy discretion. We stated:

> "Before determining whether a decision or action embodies such a choice that is subject to discretionary immunity, we must first ascertain the nature of the decision or action involved. In this case, the city and the county both describe their decisions in broad terms—as part of the larger determination to approve the Ped-to-MAX design. Plaintiff, on the other hand, insists that the decision at issue is much narrower—it is the decision to paint the crosswalk.
>
> "Case law makes clear that, although the overall design of a government project may entail the type of decisions that implicate discretionary immunity, that does not mean that every aspect of the project is subject to that defense. As we explained in *McComb v. Tamlyn*, 173 Or App 6, 12, 20 P3d 237 (2001), 'a decision to build a highway rather than a railroad in a particular location is a governmental policy that cannot give rise to liability under the statute. On the other hand, many decisions in the planning and design of highways require the exercise of some technical discretion but do not necessarily involve governmental policy choices.' "

*Id.* at 312-13.

Thus, the relevant and dispositive question in this case—presuming that the disputed issue of fact with respect to the scope of Mercer's authority is resolved in favor of plaintiff's position that it included the authority to choose and locate the fountain covers—is whether those decisions

embodied a policy judgment. We conclude that a reasonable juror could find that they did not.

That is so for several reasons. First, Mercer himself agreed that his decisions were within his "day-to-day operations"; such operations have been identified as ministerial and not discretionary. *Vokoun*, 335 Or at 33. Second, the Supreme Court has explained that discretionary or policy decisions are ones that are made by "the executive branch of the government which should not be reviewed by the judicial branch." *Stevenson*, 290 Or at 8. In explaining that distinction, the court elaborated: "Like virtually every other activity, both planning and design, as well as maintenance of roads, frequently require the making of decisions which do not involve the making of public policy; for example, *the decision whether to make a safety fence two feet rather than three feet high." Id.* at 10 (emphasis added). A juror could rationally find that, in the circumstances of this case, there is no significant difference between the height of a safety fence and the height of a fountain cover.

Finally, the Supreme Court has held repeatedly that, where a public entity has a duty to protect people from injury, the entity may have discretion in choosing how to accomplish that objective, but it does not have discretion to fail to do so entirely. *Miller*, 297 Or at 318; *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 22 n 20, 734 P2d 1326 (1987) ("We think that a school principal's failure to take any precautions whatever, if that was unreasonable, is not an exercise of policy discretion."); *Mosley*, 315 Or at 92 ("The range of permissible policy choices does not, however, include the choice of not exercising care."). Here, defendant had a duty to provide reasonable protection to its invitees, *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984), and there is evidence from which a jury could conclude that the relevant decision-maker—Mercer—did not consider taking safety precautions in choosing and placing the fountain covers, as (arguably) demonstrated by the following testimony:

"Q: Was it a slipping or tripping hazard in terms of the Vortex, the raised flange, was it—did that—was that ever a concern for you prior to Ms. Smith's incident?

"A: No.

"Q: Is that something you even thought about? Not being a concern can be one thing.

"A: I just wasn't concerned—well, frankly, I never thought about it."

In sum, we conclude that disputed issues of fact remain with respect to whether defendant is entitled to immunity under ORS 30.265(3)(c). For that reason, the court erred in granting defendant's motion for summary judgment as to plaintiff's first two specifications of negligence.

Reversed as to summary judgment ruling on discretionary immunity; otherwise affirmed.