Submitted November 23, 2010, reversed and remanded December 29, 2011

# CHESTER C. WESTFALL,
*Plaintiff-Appellant,*

*v.*

# STATE OF OREGON,
by and through the actions of its agency
the Oregon Department of Corrections,
*Defendant-Respondent.*

Marion County Circuit Court
07C23164; A140772

271 P3d 116

Bradley J. Volk, Richard L. Cowan, and Rockwell & Cowan filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff brought this action against the state for negligence and false imprisonment based on an alleged improper calculation by Oregon Department of Corrections (DOC) employees of plaintiff's prison-release date. The trial court granted the state's motion for summary judgment, concluding that the DOC employees who calculated plaintiff's sentence were performing a discretionary function and, therefore, the state was immune under ORS 30.265(3)(c) from tort liability arising from the employees' actions. Plaintiff assigns error to that decision, and, reviewing the facts in the light most favorable to plaintiff, we conclude that the state was not entitled to judgment on its immunity defense.[1] Accordingly, we reverse and remand.

Plaintiff was convicted in Jackson County of various crimes and was sentenced for those convictions in a January 24, 2000, judgment. The three prison sentences that the Jackson County trial court imposed in the judgment provided for plaintiff to serve 26 months on the first count (Jackson Count 1), eight months consecutively to that sentence on the second count (Jackson Count 2), and six months concurrently with the consecutive eight-month sentence on the fourth count (Jackson Count 4). The following illustration approximately represents how DOC structured those sentences:

Jackson Count 1          Jackson Count 2
— 26 months —            — 8 months —

                         Jackson Count 4
                         — 6 months —

Plaintiff later escaped from an Oregon State Hospital warehouse work crew while serving his Jackson County sentences. After he was recaptured, plaintiff was convicted in Marion County of escape in the second degree (Marion Count) and was sentenced on July 12, 2001, to 20 months in

---

[1] On appeal of a grant of summary judgment, we review the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

prison "consecutive to any sentence previously imposed." Because plaintiff was still serving his sentences from the Jackson County case, DOC structured the Marion County sentence so that it would be served consecutively to Jackson Count 2, as shown:

| Jackson Count 1 | Jackson Count 2 | Marion Count |
|---|---|---|
| — 26 months — | — 8 months — | — 20 months — |
| | Jackson Count 4 | |
| | — 6 months — | |

Plaintiff was subsequently convicted in Douglas County of various crimes (Douglas Counts)—a case that apparently was pending when the Jackson County case was resolved—and, on July 19, 2002, received three 13-month prison sentences to run concurrently with one another. DOC structured those sentences to run concurrently with the Marion County sentence, as shown:

| Jackson Count 1 | Jackson Count 2 | Marion Count |
|---|---|---|
| — 26 months — | — 8 months — | — 20 months — |
| | Jackson Count 4 | Douglas Counts |
| | — 6 months — | — 13 months — |

Finally, plaintiff was convicted in Josephine County of various crimes and received his sentences on those convictions on September 11, 2002. On Count 49 (Josephine Count 49), plaintiff received a prison sentence of "26 months consecutive to all previously imposed sentences." On Count 5 (Josephine Count 5), he received a prison sentence of "10 months consecutive to count 49." On Count 10 (Josephine Count 10) and Count 46 (Josephine Count 46), plaintiff received identical prison sentences of "13 months concurrent with all previously imposed sentences."[2] DOC structured the

---

[2] The remaining two counts for which plaintiff received a prison sentence were both "12 months concurrent with all previously imposed sentences," and, because those sentences were shorter than the 13-month concurrent sentences imposed for Josephine Count 10 and Josephine Count 46, they had no effect on DOC's structuring of plaintiff's sentences.

sentences on counts 10 and 46 to run concurrently with the Marion County sentence and the consecutive Josephine County sentences to run consecutively to the Marion County sentence, as shown:

| Marion Count<br>— 20 months — | Josephine Count 49<br>— 26 months — | Josephine Count 5<br>— 10 months — |
|---|---|---|
| Douglas Counts<br>— 13 months — | | |
| Josephine Count 46<br>— 13 months — | | |
| Josephine Count 10<br>— 13 months — | | |

Roughly three years later, plaintiff received post-conviction relief in his Marion County case, resulting in vacation of the sentence in that case and a remand for resentencing.[3] Because the Marion County sentence was vacated, DOC in 2005 had to restructure plaintiff's other outstanding prison sentences—the Josephine County sentences and the Douglas County sentences. To accomplish the restructuring, DOC employees followed the directives outlined in a policy that DOC had adopted in November 2004 to instruct its employees on the computation of prison sentences in light of the terms used by courts to impose those sentences in judgments. The DOC policy provided the following instruction to DOC employees in dealing with the phrase "consecutive to sentences previously imposed" in a judgment:

> "A consecutive sentence begins on the date of completion of the preceding sentence in the sequence of sentences. If the court orders that a sentence be served 'consecutive to sentences previously imposed,' the sentence will be set up as consecutive to any other sentences imposed the same date or on an earlier date. (Sentences imposed the same date **will be** considered as 'previously imposed.')"

(Boldface and underlining in original.)

---

[3] The Marion County trial court resentenced plaintiff to 15 months in prison, which, as of the date of resentencing, he had already served. Accordingly, the Marion County sentence no longer had an effect on plaintiff's prison-release date.

Therefore, when DOC employees restructured the consecutive prison sentence imposed on Josephine Count 49—which was imposed by the court about two years before the adoption of the above-quoted DOC policy and was expressed as "26 months consecutive to all *previously imposed sentences*" (emphasis added)—the employees, pursuant to their understanding of the policy, structured that sentence to run after the concurrent Josephine County sentences, because those sentences were "imposed the same date" as the sentence on Josephine Count 49. Accordingly, the new sentence structure became:

| Josephine Count 46 | Josephine Count 49 | Josephine Count 5 |
| — 13 months — | — 26 months — | — 10 months — |

Josephine Count 10
— 13 months —

Douglas Counts
— 13 months —

After his release from prison, plaintiff brought this action against the state for negligence and false imprisonment, alleging that DOC employees, as employees of the state, had incorrectly applied the Josephine County judgment when restructuring his sentence in 2005, thereby extending his incarceration 13 months beyond the time that the Josephine County trial court had intended him to serve.[4] Specifically, plaintiff alleged that the Josephine County court had intended that the sentence for Josephine Count 49 run consecutively to the sentences imposed in earlier cases that he was serving when the Josephine County judgment was entered. The state answered and asserted affirmative defenses, including that the DOC's application of the prison sentences imposed in the Josephine County judgment and the resulting restructuring of plaintiff's sentences were actions for which, under ORS 30.265(3)(c), the state is immune from tort liability.

---

[4] The state disputes that calculation. In its view, the longest period of time that plaintiff could have been improperly incarcerated was 32 days—the difference between the end of the 13-month Douglas County sentences and the end of the 13-month Josephine County concurrent sentences—which equates to 51 days adjusted for plaintiff's earned time and credit for time served.

The state moved for summary judgment, contending, among other things, that, even if the DOC employees' actions would give rise to *respondeat superior* tort liability, the instructions in the DOC sentencing policy are the product of policy decisions made pursuant to authority delegated to the agency under ORS 137.320 to compute a criminal defendant's sentence and, therefore, the state enjoys immunity from tort liability under ORS 30.265(3)(c) for the actions of DOC employees in implementing the DOC policy.[5]

Plaintiff argued in response that ORS 30.265(3)(c) does not immunize the state from tort liability in this case because, in light of the mandatory direction that the DOC policy gives about the meaning of judgments that impose prison sentences consecutively to sentences previously imposed, the determination of how to structure the Josephine County sentences was merely a ministerial decision by DOC employees that did not involve the exercise of policy judgment on which discretionary immunity depends. Further, plaintiff challenged, in essence, whether the DOC policy protected the state from tort liability for the DOC employees' treatment of the concurrent sentences in the Josephine County judgment, which, in plaintiff's view, resulted in treating them as freestanding prison sentences notwithstanding that they were imposed concurrently with all previously imposed sentences.

After a hearing, the trial court agreed with the state's immunity argument and granted its motion for summary judgment on plaintiff's negligence claim, reasoning that

---

[5] ORS 137.320 provides, as relevant:

"(1) When a judgment includes commitment to the legal and physical custody of [DOC], the sheriff shall deliver the defendant, together with a copy of the entry of judgment and a statement signed by the sheriff of the number of days the defendant was imprisoned prior to delivery, to the superintendent of the [DOC] institution to which the defendant is initially assigned * * *.

"* * * * *

"(3) Upon receipt of the information described in subsection (1) or (2) of this section, [DOC] shall establish a case file and compute the defendant's sentence in accordance with the provisions of ORS 137.370."

"DOC determined as a policy that when a judgment referred to sentences previously imposed, DOC would interpret that to mean one of the sentences imposed on the same date. It may very well be * * * that in fact what the Josephine County Court meant was previously imposed in other cases or in other counties, but those terms do not appear on the face of the judgment, and I assume if they had appeared that, notwithstanding its policy, that DOC would have honored that. * * * I am not necessarily saying that I agree with DOC's interpretation or that they should have had a policy of looking beyond the face of the judgment, but it does appear to be a policy decision that they implemented, and I do believe it is within the discretionary immunity."

The court later reached the same conclusion on plaintiff's false imprisonment claim and granted summary judgment in the state's favor on that claim. On appeal, both parties essentially reprise the arguments that they made to the trial court. As explained below, we agree with plaintiff.

Although the state has generally waived its immunity against tort liability for its actions and those of its officers, employees, and agents, ORS 30.265(1), there are a number of exceptions to that waiver, including that found in ORS 30.265(3)(c), which provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

ORS 30.265(3)(c) thereby insulates public bodies from tort liability for acts or decisions that constitute "a choice among alternative public policies by persons to whom responsibility for such policies [has] been delegated," *Miller v. Grants Pass Irrigation*, 297 Or 312, 316, 686 P2d 324 (1984), yet the immunity does not come to bear on the merely routine decisions that a public employee makes in the course of everyday governmental activities, *Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 89, 843 P2d 415 (1992). Therefore, the

inquiry whether a decision made by an officer, employee, or agent of a public body is one that is protected by ORS 30.265(3)(c) focuses on whether responsibility to make a policy judgment has been delegated to the *particular* public decision-maker and whether the alleged tortious decision was an exercise of that responsibility. *Bradford v. Davis*, 290 Or 855, 865, 626 P2d 1376 (1981); *see also Smith v. Bend Metropolitan Park and Recreation*, 247 Or App 187, 194-95, 268 P3d 789 (2011) (focusing on particular public decision-maker to whom responsibility has been delegated to determine if alleged tortious decision is immune).

For example, in *Lowrimore v. Dimmitt*, 310 Or 291, 797 P2d 1027 (1990), the Supreme Court concluded that a deputy sheriff's decision to pursue a criminal suspect, who was driving a vehicle that struck the plaintiff's vehicle during the pursuit and injured the plaintiff, did not qualify for immunity from tort liability under ORS 30.265(3)(c). Focusing on the responsibility delegated to the deputy sheriff, the court reasoned that, "[a]lthough the decision to pursue may have been made pursuant to a county departmental policy, the decision itself is not a policy judgment" entitled to immunity. *Id.* at 296.

Here, plaintiff alleged that DOC employees improperly applied the sentencing language in the Josephine County judgment and, because the improper application led him to serve more time in prison than the Josephine County court had intended, the state is liable in tort for the decisions of those employees. Therefore, the determinative inquiry in this case is whether *the DOC employees* had been delegated the responsibility to make policy judgments in effectuating the agency's duty to compute a criminal defendant's prison sentence and whether the restructuring of plaintiff's sentence *by the DOC employees*—the alleged tortious decision—was an exercise of that responsibility.

The existence and content of the DOC policy resolves that inquiry. Although, as the state argues, the adoption of the DOC policy may reflect a choice among competing policy objectives by individuals within the agency to whom the responsibility to make such a choice has been delegated, the DOC employees implementing that policy were *not* delegated

similar responsibility; the policy choice had been made for them through the instructions in the DOC policy that required them to make certain decisions when confronted with particular language in a judgment. Put differently, even if the employees' sentence-restructuring decisions in this case were made in perfect conformity with the DOC sentencing policy, those decisions were not the product of policy choices by the employees.

In sum, when the DOC employees implemented the sentencing policy, they made routine decisions in the course of their everyday activities—*viz.*, computing an inmate's prison sentence—that were not choices among competing policy objectives, and, therefore, those decisions are not insulated by the immunity provided in ORS 30.265(3)(c). Accordingly, the trial court erred in granting summary judgment in the state's favor on the state's immunity defense.

Reversed and remanded.